# Staunton

Bertie P. Stubbs, Adm'x, etc. v. Robert L. Parker.

September 23, 1937.

Present, Holt, Hudgins, Gregory, Browning, Eggleston
and Spratley, JJ.

UPON PETITION FOR REHEARING.

Richmond, January 20, 1938.

Present, All the Justices.

The opinion states the case.

*Thomas A. Williams,* for the plaintiff in error.

*Sinnott & May* and *V. P. Randolph, Jr.,* for the defendant in error.

BROWNING, J., delivered the opinion of the court.

The subject of this suit is an automobile accident which occurred on March 2, 1935, in the early morning about two o'clock. The place of the accident was about 433 feet north of the Boulevard bridge on a road in Byrd park in the city of Richmond. The road is straight for from 120 to 150 feet from the bridge looking north, and then becomes a left-hand curve, on an upgrade of about five per cent.

The defendant, Robert L. Parker, a young man still at school, was driving a Ford V-8 car, which was capable of developing a maximum speed of between 85 and 90 miles per hour. His companion, who was the only other occupant of the car, was Miss Marguerite Stubbs, the plaintiff's decedent, a girl seventeen years old. They were together at a party, which began in the early part of the night, embracing a variety of types of pleasure, including a treasure hunt, which, on this occasion, consisted of driving in automobiles, on a routed course, stopping at designated points, in search of the treasure, and ending in a dance at the home of a gentleman named Paul. They left Paul's house about two hours after midnight, as has been stated, and proceeded toward the home of the young girl in the direction and way

which has been outlined. The distance from Mr. Paul's residence to the point of the accident was reckoned at about a half of a mile. As they passed over the upgrade just after making the curve the automobile went off of the road about five feet to the right striking a maple tree, obliquely, at or about the door post of the car, severing the body of the car in halves, then skidding on its side 90 feet to a point where it lay upside down when it came to a final stop, with half of the housing and the right rear wheel down the road towards the bridge some 125 feet from the car. The bark was knocked off of the side of the tree.

Miss Stubbs was killed outright. Her mother, the plaintiff in error, instituted this suit which resulted in a verdict of the jury for the defendant, which was sustained by the judgment of the trial court.

The plaintiff, by her notice of motion, asserted a case of gross negligence upon the part of Parker, the defendant, in failing to keep a proper lookout, and in failing to operate his automobile with proper care, and in failing to have the same under proper control, and in operating his automobile at an excessive rate of speed.

The defendant denied his guilt and predicated his defense mainly upon the alleged contributory negligence of the plaintiff.

As to this a careful consideration of the evidence reveals a state of circumstances and facts that bring us to the compelling conclusion that not only was the plaintiff's decedent free from any negligence whatever but that the defendant was guilty of gross negligence, which resulted in the tragedy referred to.

The accident occurred two hours past midnight. It was in a city park, reached just after crossing a bridge, conditions which certainly accentuate the hazards of excessive speed.

It is stated in the petition for a writ of error that the trip covered two blocks to the bridge, and across the bridge, and then a hundred yards beyond to the place of the accident, a distance of less than a mile. Traveling at the

rate of speed admitted by the defendant, the time occupied was covered in from thirty seconds to a minute. The decedent, a girl child seventeen years old, was seated in the car by his side. If she were conscious, at the beginning, of the peril ahead of her, a remonstrance or protest from her to the defendant driver as to his reckless operation of the car would have been, in all human probability, unavailing. Our warrant for this assertion is found in the fact that when she did protest in an outcry of anguish and fear, as they were going off the bridge, about three hundred feet from the place at which she met her death, it was unheeded by him. Her ejaculation was, "My God, Bob, please do something." He said that he did nothing to check his speed until he saw the tree, which was struck, when he was about eighteen feet from it.

At the trial when the defendant was asked what his rate of speed was as he started across the bridge he answered that he could not say but that he was driving as he usually drove out in the country, and when asked how fast that was he nonchalantly said, "Oh, between—about 45 or 50 miles an hour." He then said that he checked his speed some going over the bridge but picked it up again after he had passed the tollman's position, which is about half way over the bridge.

Of course, the young man was in a pitiable plight when he realized the tragedy which ensued and the havoc that had been wrought by his reckless conduct. This we say preliminary to noting his admissions to those who first reached the scene.

One of the first persons to arrive at the place of the accident was A. R. Withers, a member of the police force of the city of Richmond. He stated that the defendant said to Sergeant Hanna and himself that he was running too fast, and when asked at what speed he was driving he said between 55 and 60 miles an hour. A. A. Bricker, another police officer, said that the defendant made a statement in the Juvenile Court to Judge Ricks that he was running entirely too fast.

The defendant testified in the case in judgment and did not deny the statements made by the officers. When he was asked what occurred between himself and them relative to the question of speed, he said that they came up and asked him a lot of questions and one of them asked how fast he was going and he said that he didn't know, that he wasn't sure, but he thought that his speed was around 55 or 65 miles an hour.

Mrs. Stubbs, the plaintiff in error, testified that the defendant told her that the decedent made the protest which has been referred to as they were coming off the bridge. Mrs. Russell, who was present at the conversation referred to between Mrs. Stubbs and the defendant, corroborated the statement made by Mrs. Stubbs. This testimony was not contradicted by the defendant except in an unimpressive way. In fact, there is little or no conflict in the testimony as to any of its important phases. There was unusual accord even in the statement of distances between points on the route traversed and other like details.

■ Our view of the matter is that the evidence of the defendant alone convicts him of gross negligence and is quite sufficient to have warranted a verdict and judgment against him.

The principle announced by this court in the case of *Margiotta* v. *Aycock*, 162 Va. 557, 174 S. E. 831, 834, is pertinent here. Although the facts in that case are dissimilar to those in this case, the issue was whether the conduct of the defendant amounted to gross negligence.

It was there said: "The Lee car, with lights burning, stood in plain view on a straight road. Mr. Margiotta, when 225 feet from the head of the column of parked cars, recognized the fact that there was some trouble down the road, yet he drove rapidly and with undiminished speed into this car which he must necessarily have seen had he looked, nor did he undertake to apply his brakes until immediately upon it. He had ample time to stop, and he had ample time in which to drive around it. Indeed, much of

the strength of the defendants' case rests in the fact that the negligence charged is unbelievably gross."

In the case of *Irvine* v. *Carr*, 163 Va. 662, 177 S. E. 208, 211, another automobile accident case, involving the issue of negligence, this was said: "In our opinion, however, the case does not turn on the question of a conflict of evidence. We are in accord with the view of the trial court that the evidence of the defendant, standing alone, is sufficient to warrant a verdict for the plaintiff."

We have mentioned the shortness of the distance traveled that night by the defendant and the decedent from the Paul house to the point of the catastrophe. We have stressed the speed which was developed by the Ford V-8 car. We have noted the remonstrance of the girl. All of this, together with the nearly complete demolition of the car, some of its important parts thrown 125 feet away, the car, itself, or what remained of it, skidding on its side 90 feet distant from the tree it had struck obliquely, tells the story of an utter disregard of the safety and well-being of the defendant and his trusting companion. The admissions of the defendant that he was driving too fast, that he was going entirely too fast, are more significant to our minds than the effort to estimate his rate of speed by numbers of miles in periods of time.

The former shows that the young man was conscious of the fact that he was driving hazardously and recklessly, though we do not, of course, mean to suggest that it was intentional. The exuberance of youth is a beautiful thing under a wholesome degree of restraint, but let loose and unbounded it not infrequently leaves death in its wake.

Appropriate cases decided by this court, in this relation, are *Sisson* v. *Anderson*, 165 Va. 629, 634, 183 S. E. 431, and *Price* v. *Burton*, 155 Va. 229, 234, 154 S. E. 499.

It is true that in this case we have the verdict of a jury and its confirmation by the trial court for the defendant.

We have great respect for the juries and the trial courts but all human agencies sometimes fall into error and misconceive the significance of things, and this is particularly

so in the heat and stress of a trial heightened by zealous appeals of able and resourceful advocates.

■ In the *Margiotta Case, supra,* it was said: "Of course, the jury's verdict is not always conclusive. In cases of ordinary negligence this court has always freely exercised its right to say that it is unsupported by the evidence. By the same token it has the right to say, notwithstanding the verdict, that there is no evidence whatever of gross negligence."

[5] Of course, by the same token it has the right to say, *non obstante veredicto,* that there is the most potent evidence of gross negligence. So it is in this case.

It was said in *Johnson* v. *R., F. & P. Ry. Co.,* 160 Va. 766, 779, 169 S. E. 603, 607: "We are very mindful of the respect that is due to the verdict of the jury, and that respect we must ordinarily heed, but it is not obligatory upon us, 'when to do so would strain the credulity of the court,' * * *."

■ Having reached the conclusion herein expressed, we reverse the judgment of the trial court and remand the case to it for a new trial, to be limited to the question of the amount of the damages sustained by the plaintiff in error.

*Reversed and remanded.*

SPRATLEY, J., dissenting.

As I read the evidence in this case, there is a conflict on several questions of fact. I will here refer to only two of the disputed questions.

The mother of the decedent and a friend testify that the defendant stated to them that the outcry of the young woman passenger was uttered as the car was coming off the bridge, about three hundred feet from the place at which she met her death. The defendant testifies positively that the outcry was made when the car was eighteen feet from the point of the collision. The outcry, "My God, Bob, please do something," indicates that it was one of alarm, and made in view of approaching or imminent danger. If it

was made on account of the speed of the car, it is difficult to understand why it did not refer to the speed, since that would have been simpler and more natural. It must have been the danger aroused by the sight of the tree, shown by the headlights of the car, that caused her alarm.

It is true that two police officers testified that the defendant made a statement that he was running from fifty-five to sixty miles an hour. The defendant testified that while he might have made the statement to the officers in the excitement immediately succeeding the accident, upon reflection, he believed that his speed was nearer forty-five or fifty miles an hour.

Taking into consideration the conditions under which the first statement was made, the circumstance of having to slow down on account of the narrowness of the bridge on account of the toll station, and the maturer reflection of the defendant, there is a substantial conflict.

On the conflicts in the above testimony, the jury resolved the doubt in favor of the defendant. The jury had the opportunity of seeing and hearing these witnesses testify, and of noting their testimony and demeanor. The emphasis which the witnesses imparted to their words, is incapable of being accurately reproduced on the printed page. Under this state of facts and under these conditions, I am unable to say that the same conclusion would necessarily be drawn therefrom by all reasonable men. Whether or not, under the surroundings and circumstances, the conduct of the defendant amounted to gross negligence, was a question for the jury under proper instructions from the court. There is nothing inherently incredible about the defendant's testimony. While there may be no doubt of the ordinary negligence of the defendant, the question of his gross negligence depends upon the credit to be given the defendant's testimony.

There are other and far-reaching questions involved in this suit, but the majority opinion having concluded that there was gross negligence as a matter of law, it would

serve no useful purpose to discuss these other questions in a dissenting opinion.

I dissent from the majority opinion because of my inability to agree that the statement of facts, upon which it is based, are not in conflict, and because the conclusions of law therein reached, are not applicable to a more accurate statement of the evidence.

*Upon Petition for Rehearing.*

RICHMOND, JANUARY 20, 1938.

Present, All the Justices.

BROWNING, J., delivered the opinion of the court.

The defendant in error filed a petition to rehear the judgment of this court rendered on September 23, 1937.

A rehearing was granted and the case reargued at the January, 1938, term of the court. Upon a careful consideration of the questions involved upon the rehearing, we are constrained to adhere to our former opinion, and the judgment of the Law and Equity Court of the city of Richmond, Part Two, is therefore reversed, and the case remanded for a new trial to be limited to the question of the amount of damages sustained by the plaintiff in error.

*Reversed and remanded.*

HUDGINS, EGGLESTON and
SPRATLEY, JJ., dissenting.

EGGLESTON, J., dissenting.

I agree with the conclusion of the majority opinion that there is no evidence in the record before us that the plaintiff's decedent was guilty of contributory negligence. Hence it was reversible error to have given any instruction on that subject.

The evidence related in the majority opinion convicts the defendant of gross negligence. But there is in the record other evidence, not inherently incredible, and which, if believed by the jury, absolved him of that charge. Therefore, in my opinion, it is a question for a jury and not for this court to say whether or not the defendant was guilty of gross negligence under all of the facts and circumstances of the case.

I think the judgment should be reversed and the cause remanded for a new trial both as to the defendant's liability and the *quantum* of damages.

SPRATLEY, J., dissenting.

The argument on the rehearing presented nothing more than a renewed emphasis on the conflicts in the evidence.

The situation with respect thereto is still the same so far as I can perceive. If the evidence of the defendant is true he was merely guilty of ordinary negligence. If the evidence of the plaintiff is to be accepted the defendant was guilty of gross negligence. The jury in the advantageous position occupied by it has said that considering all of the evidence, the attitude and demeanor of the witnesses, their manner while testifying, their interest and bias, if any, and their opportunity for knowing the facts about which they testified, the defendant was not guilty of gross negligence. An able, learned and experienced trial judge, with like opportunity for observance and judgment, has refused to disturb the jury's verdict. There is no suggestion that the jury was swayed by prejudice, partiality or bias. There is nothing in the record to indicate that they were not fair and responsible men. The defendant's story of the happenings on the night in question is not incredible. It was a tragedy resulting from a carefree and innocently hilarious celebration by youth. In an unguarded moment death crept into the picture through the mere failure to exercise continuous prudence and caution. A moment's relaxation of ordinary care brought disaster.

Since we profess to adhere to the familiar rule that a jury shall decide all questions of fact and that their verdicts may be based on evidence acceptable to fair and responsible men, I am compelled to apply that rule in this case.

I have addressed myself solely to the question of the manifest conflict in the evidence. There are other important questions in this case, however, such as, for instance, the propriety of giving instructions on contributory negligence. The majority opinion, however, makes such further discussions unnecessary. I dissent therefrom.