# Richmond

D. O. Wolfe, Administrator of Marvin Wayne Tingler,
Deceased v. Ralph E. Lockhart and
William L. Gearhart.

November 30, 1953.

Record No. 4098.

Present, Eggleston, Spratley, Buchanan, Miller and Smith, JJ.

The opinion states the case.

*R. B. Stephenson* and *C. S. Minter,* for the plaintiff in error.

*William Goode, Hale Collins* and *John T. Delaney,* for the defendants in error.

MILLER, J., delivered the opinion of the court.

Marvin Wayne Tingler, fourteen years of age, was killed on December 30, 1951, at 4:20 a. m., when an automobile that he occupied as a guest, and which was then standing on Route 60 about a mile east of Clifton Forge, Virginia, was violently struck by another car.

Tingler's administrator instituted action under section 8-633, Code of 1950, commonly called the death by wrongful act statute, against Ralph E. Lockhart, owner and alleged operator of the vehicle occupied by decedent, and against William L. Gearhart, driver of the other automobile involved in the collision. Verdict was returned for both defendants, and from the judgment entered thereon, the administrator obtained an appeal.

Appellant's several assignments of error may be consolidated and stated as follows:

1. The evidence conclusively establishes as a matter of law that Ralph E. Lockhart was guilty of gross negligence, that William L. Gearhart was guilty of negligence, and that their combined negligence proximately caused the collision and the death of decedent; hence both defendants should be adjudged liable and the case remanded for assessment of damages.

2. If the liability of the defendants has not been thus conclusively established, still the court committed prejudicial error in giving and refusing certain instruction, and the judgment should be reversed and a new trial awarded on all issues.

These contentions require that the salient facts and some of the testimony disclosing how the tragedy occurred be stated.

Defendant Lockhart is engaged in business in Covington, Virginia, and on December 29, 1951, about eight o'clock p. m., he requested Earl Persinger, a boy nineteen years of age, to drive him home. As the two were about to leave Lockhart's place of business, Marvin Wayne Tingler asked if he could go along, and Lockhart agreed to his request. The three thereupon seated themselves in Lockhart's Nash car with Persinger at the wheel. At that time Lockhart was somewhat under the influence of intoxicants and he took with him a pint bottle of whiskey. After he got into the car, instead of going to his home which was nearby, he directed Persinger to drive him to Lewisburg, West Virginia. As time went on he continued to drink and became more definitely under the influence of intoxicants, and directed Persinger to drive him to various towns in Virginia and West Virginia. Two or more trips were made between Covington and Lewisburg, and to several other places. Late in the evening Tingler asked that he be taken to his grandfather's home in Covington where he lived, but Lockhart paid no attention to his request, and Persinger, at Lockhart's direction, drove on through Clifton Forge and to Lexington, Virginia. When they reached the Robert E. Lee Hotel in Lexington, Lockhart, who was then definitely drunk, tried to obtain a room at the hotel. He was refused admittance, and after some further delay, Persinger started driving back west on Route 60 toward Clifton Forge and Covington.

On the trip back west Lockhart was in the front seat with Persinger, and Tingler was asleep in the rear seat. When they reached a point on the highway at the western edge of .

the village of Cliftondale a mile east of Clifton Forge, the car sputtered, thus indicating that the gas had been exhausted. However, Persinger was able to drive off the hard surface and onto the right shoulder of the road before the car actually stopped.

At this point the hard surfaced part of the highway is 30 feet 6 inches wide and is divided into three traffic lanes of equal width, which are marked off by broken white lines.

There is some conflict in the testimony of Persinger and Lockhart as to what occurred when the car stopped. Persinger testified that when it was ascertained that the car was out of gas, Lockhart told him to turn the vehicle around and drive back to a gas station, but as he knew of no nearby station, he informed Lockhart that he would walk into Clifton Forge and get some gas and bring it back. He thus described what he then did and what Lockhart said and did with the car:

"Q. Well, what did you tell him in reply to that?

"A. I told him I didn't think it was any service station down in there, and that I'd walk over to Clifton and get some gas.

"Q. What did Mr. Lockhart say then; what did he do?

"A. He said he knew what his car would do.

"Q. Knew what his car could do. And what did he do?

"A. He backed it out across the road.

"Q. Where were you then when he backed it out in the road?

"A. Whenever he started talking about turning it around, well, I got out and walked across the road.

"Q. Where were you going, if any place?

"A. I wasn't going anywhere then; I was going to flag cars if any come over the hill there.

"Q. Going to flag cars. Do you know how he got the car out on the hard surface?

\*     \*     \*     \*     \*     \*     \*

"A. Put it in reverse gear and pushed the starter, pushed the clutch in and let it drift.

"Q. And where did that place the Nash car owned by Mr. Lockhart; where did it stop?

"A. Well, he let the clutch out about middleways of the road, and he was setting directly crossways of the road.

\*　　\*　　\*　　\*　　\*　　\*　　\*

"Q. \* \* \* Now, when it got to this position in the road, in the middle of the road, and stopped there, what did Lockhart do?

"A. He just fell over the steering wheel like he was passed out."

Persinger further testified that he then saw the lights of a car approaching from the west, which turned out to be the vehicle driven by Gearhart, and that he waved his hands to warn the driver but was unable to attract his attention. The next moment the eastbound vehicle crashed into the left side of Lockhart's car which was standing across the road partially blocking the center and eastbound traffic lanes.

Lockhart denied that he backed the car into the road and insisted that such movement was made by Persinger. He did, however, say that when the car stopped, he was awakened and made aware of the fact that the car had run out of gas and that he suggested to Persinger to turn it around in the highway and go back to a filling station.

Westward from the scene of the accident the three-lane highway is straight for 1,047 feet. From the extreme western end of this 1,047-foot stretch, there is a slight down grade eastward, but the highway levels out several hundred feet west of the point of impact and is comparatively level from there to where the collision occurred.

The maximum speed for passenger cars at the date of the accident was 50 miles per hour. About fifty feet westwardly from the point of collision, there was a highway marker indicating that the maximum speed eastwardly therefrom was 35 miles per hour, and Gearhart's car had entered that area when the collision occurred. Marks on the highway indicated that his vehicle skidded 62 feet astride the line divid-

ing the center and eastbound lanes before it struck the Lockhart car, skidded 72 feet thereafter, then traveled without skid marks an additional 36 feet and came to rest on the southern edge of the hard surface 108 feet from the point of impact. Lockhart's car was struck on its left rear door, and the force of the blow knocked it eastwardly 44 feet and to the northern edge of the hard surface. Both vehicles were practically demolished, Marvin Wayne Tingler was instantly killed while asleep in the rear seat, and Lockhart thrown from his car to the highway.

Defendant Gearhart testified that he was driving between 50 and 60 miles per hour and did not see the 35 mile speed sign. Nor did·he see Lockhart's car, which he said had no lights on it, until he was about 62 feet, or slightly farther, from it.

The foregoing uncontradicted facts and that part of the testimony bearing upon who backed the Nash car across the highway conclusively establish gross negligence on the part of Lockhart which was a proximate cause of the collision. There is but little doubt, if any, that he by use of the starter backed the car from the shoulder to where it stopped in the road. That his grossly negligent act may have been due to his intoxication does not excuse his wrongful conduct. *Hardiman* v. *Dyson,* 194 Va. 116, at 120, 72 S. E. (2d) 361; 38 Am. Jur., Negligence, sec. 36, p. 283. If, on the other hand, Persinger, as contended by Lockhart, backed the car across the road, Lockhart is nevertheless responsible. Persinger was acting as his agent and such movement of the car, if made by Persinger, was at Lockhart's suggestion and under his direction.

Nor is there any doubt that defendant Gearhart was guilty of negligence that constituted a proximate cause of the tragedy. From his testimony it is conclusively shown that he was driving at a prohibited speed, and that he failed to keep a proper look-out ahead. Though there may have been no lights on the standing vehicle, there is no justification or excuse for his failure to see it by the aid of his own

headlights before he was so dangerously close to it. His violation of the speed limits constituted negligence. *Stephen Putney Shoe Co.* v. *Ormsby's Adm'r.*, 129 Va. 297, 105 S. E. 563; *Hubbard, et al.* v. *Murray, Adm'r., etc.*, 173 Va. 448, 3 S. E. (2d) 397. That infraction of the law, coupled with his belated observance of the obstruction in the road, conclusively establishes his negligence as a proximate cause of the mishap.

Yet if any doubts were entertained that Lockhart was guilty of gross negligence in placing his car on the highway across the traffic lanes or that Gearhart was guilty of negligence, those doubts would be removed by the concessions made at the bar of this court; namely, that as a result of the collision and Tingler's death, Lockhart was convicted of manslaughter and Gearhart pleaded guilty to a charge of careless and reckless driving.

Our conclusions render it unnecessary that we consider any assignments of error taken to instructions having to do with the liability of either defendant. Yet the elements and quantum of damages and the question to whom the damages shall be awarded must be determined at the next trial, and thus the challenged instructions dealing with these phases of the case should be considered. They are instruction 10 given at the instance of plaintiff and objected to by defendants, and instruction G given for defendants over the objection of plaintiff. They read as follows:

"INSTRUCTION 10

"The Court instructs the jury that if they find for the plaintiff then in fixing the damages the plaintiff is entitled to recover the jury shall find the same with reference to the following:

"(1) The pecuniary loss sustained by the mother of Marvin Wayne Tingler, *fixing such sum as would equal the probable earnings of the deceased*, taking into consideration his age, intelligence and health during what would have been his lifetime if he had not been killed.

"(2) By allowing compensation for the loss of his care, attention and society to his mother.

"(3) By such other amount as they may deem fair and just to his mother for the sorrow, suffering and mental anguish occasioned by his death." (Emphasis added.)

"INSTRUCTION G.

"The Court instructs the jury that the purpose and object of the statute allowing recovery for death is to provide for the support which but for the death may have reasonably been expected to accrue to the statutory beneficiaries by reason of the normal family relationship and reciprocal duties and rights existing between them and the decedent. Therefore, the jury may take into consideration in arriving at the amount of their verdict the love and affection for the decedent, the normal family relationship and homelife, whether decedent had been deserted or abandoned by the adult beneficiaries or whether the adult beneficiaries had or had not contributed to his support."

Decedent's parents separated before his birth and were divorced sometime later. His father never contributed to his support, but his mother cared for him until he was about eighteen months old. At that time she obtained employment in Clifton Forge and placed her infant child with her parents in Covington. She remarried some years later, and she and her present husband have four girls and a boy. They live some distance from Covington, and her time has been taken up caring for her husband and those five minor children. Yet at reasonable intervals decedent visited his mother, and she visited at her parent's home where decedent continued to live, and contributed in a minor way to his support.

Sections 8-636 and 8-638, Code of 1950, direct how and to whom the damages awarded in an action under section 8-633 shall be paid. If there be no widow, husband, children or grandchildren surviving the decedent, the award shall be apportioned among and to such of the parents,

brothers and sisters of the deceased as the jury shall specify, and in such proportions as it shall direct. If the jury fails to make such specification and allotment to or among members of the designated class allowed to share therein, then under further provisions of section 8-638, the trial court is empowered to so specify and allot the damages awarded by the jury.

This decedent left a mother and father, and a brother and sisters of the half blood. We hold that his brother and sisters of the half blood fall within the same class as his parents and may participate in the damages awarded if the jury or court, as the case may be, shall elect to so specify.

In the light of the facts and statutory provisions, instruction 10 was erroneous in that it mentioned no one but the mother of decedent as entitled to be considered by the jury if it awarded damages. It should not have limited any award to the mother but should have mentioned all of the seven persons within the designated class who were entitled to be considered. *Crawford* v. *Hite, Adm'r., etc.*, 176 Va. 69, 10 S. E. (2d) 561. Furthermore, the italicized language, "*fixing such sum as would equal the probable earnings of the deceased,*" is objectionable and not justified. The phrase, "fixing such sum with reference to the probable earnings of deceased, etc.," is proper, but the italicized language does not state a proper measure of damages because it requires the jury to find a sum equal to the probable earnings of decedent.

Instruction G erroneously emphasized the idea that the purpose and object of the statute is to allow damages solely to those who might reasonably look to decedent for support. That is a matter to be considered by the jury, but it is not the sole basis of recovery on which the statutory beneficiaries may rely or the only element of damage to be considered by the jury. There are other matters and elements, such as loss of decedent's care, attention and society, and the sorrow, suffering and mental anguish occasioned

the beneficiaries by reason of his death, which may be considered and taken into account by the jury and are elements for which damages may be given to the statutory beneficiaries even though they may have had no reasonable expectancy of support from the decedent had he not been killed.

The issue of whether or not defendants were liable was fully developed and presented in the trial court. We are not unmindful of the respect that is due the verdict and judgment of that court. Yet the evidence conclusively proves as a matter of law that Lockhart was guilty of gross negligence and Gearhart was guilty of negligence, and that their negligence concurred and proximately caused Tingler's death. That being true, the verdict will be set aside, the judgment reversed, and judgment entered here to that effect. Section 8-493, Code of 1950. *Stubbs* v. *Parker*, 169 Va. 676, 192 S. E. 820. Under the authority of section 8-493, the case will be remanded to the trial court for a new trial, to be limited to the issue of the amount of damages to be awarded and the apportionment thereof to the statutory beneficiaries in accordance with the provisions of sections 8-636 and 8-638, Code of 1950.

*Reversed and remanded.*