# Richmond

## W. J. Worcester v. Mary McClurkin.

November 20, 1939.

Record No. 2113.

Present, Campbell, C. J., and Holt, Gregory, Browning, Eggleston and Spratley, JJ.

*Preston P. Taylor, E. Ralph James* and *James G. Martin & Son,* for the plaintiff in error.

*Montague & Holt, H. H. Holt* and *Kearney & Kearney,* for the defendant in error.

GREGORY, J., delivered the opinion of the court.

Mary McClurkin was seriously and permanently injured as the result of a collision between an automobile in which she was riding as a guest, which was being driven by Lieutenant W. J. Worcester, and another automobile which was being driven by Clarence K. Amory. She instituted an action for her injuries against Lieutenant Worcester and Amory and the jury awarded her $10,000 against both defendants. The finding of the jury has been approved by the judgment of the trial court. Amory did not apply for a writ of error and as to him the judgment is final. Our review is limited to the judgment against Worcester.

The trial court, over the objection of the defendant, Worcester, submitted to the jury the issue of whether he was guilty of gross negligence. It is contended that this was reversible error for the reason that as a matter of law, there

was no evidence which tended to show gross negligence on the part of Lieutenant Worcester in the operation of his automobile. The decision of this question necessitates an analysis of the evidence.

Miss McClurkin lived in Washington, D. C., where she was an employee of the Treasury Department. She and her friend, Miss Gertrude Natvig, also an employee of the Treasury Department, went by bus to Fortress Monroe, Virginia, to visit friends. They had purchased round trip fares and had contemplated returning to Washington by bus on Sunday, February 6, 1938, but Miss Natvig, who was a friend of Lieutenant Worcester, wanted to drive back to Washington with him. They persuaded Miss McClurkin to accompany them in the Lieutenant's car, which was a Ford, 1937 model, and in good condition.

He and his guests left Fortress Monroe on Sunday afternoon shortly before 4:30 P. M., and he expected to connect with the ferry leaving Yorktown at 5 P. M. It was exactly 4:30 P. M. when they crossed Mill Creek bridge leading from Fortress Monroe into Phoebus and from that point to Yorktown is about 25 miles. They had to proceed through the town of Phoebus, the city of Hampton and the village of Yorktown in order to reach the ferry. The road on that Sunday afternoon had heavy traffic.

Lieutenant Worcester, according to the testimony of Miss McClurkin, was driving recklessly and at high speed. She protested on three different occasions before the accident. She stated that he narrowly averted an accident at Hampton Bridge and again on the Back River road. He was driving so fast that he frightened her. Finally, she told him, "If you don't slow down we will never get to Washington." Her remonstrances were in vain. His reply to her protests was "relax." He continued his fast driving until the collision with the Amory car. This testimony is not contradicted or denied by him. He admits that he heard her protests and that he refused to heed them. The Amory car coming from the opposite direction collided almost "head on" with Lieutenant Worcester's car and as a result Miss McClurkin

received her injuries. The cars came to rest after the collision on Lieutenant Worcester's side of the road. They were practically demolished.

Lieutenant Worcester testified that his speed was 55 to 60 miles per hour at the time of the accident. There is other testimony that he was driving much faster. In fact, there is testimony from which it might be inferred that his speed was near 80 miles per hour.

While Miss McClurkin was in the hospital, Lieutenant Worcester stated to her that, "I did not see the Amory car until the accident occurred." He also stated to the motor vehicle officer who was investigating the accident, "Well, it was all my fault, I guess."

Was there sufficient evidence of the gross negligence of Lieutenant Worcester to carry that issue to the jury? We think there was. These outstanding facts point to his gross negligence: He attempted to drive some 25 miles in 30 minutes through heavy traffic and passing through the town of Phoebus, the city of Hampton and the village of Yorktown. In driving he narrowly escaped two other accidents. He wove in and out of traffic and frightened Miss McClurkin. The evidence discloses that he was driving at a very high rate of speed at the time of the collision. According to his own testimony he averaged on the trip 55 to 60 miles per hour, but according to a reasonable inference from other testimony possibly as much as 80 miles per hour. He admitted that he did not see the Amory car until the impact and he confessed that it was all his fault. The trial court correctly submitted the question of gross negligence to the jury. *Drumwright* v. *Walker,* 167 Va. 307, 189 S. E. 310; *Wright* v. *Swain,* 168 Va. 315, 191 S. E. 611; *Yorke* v. *Cottle,* 173 Va. 372, 4 S. E. (2d) 372; *Thornhill* v. *Thornhill,* 172 Va. 553, 2 S. E. (2d) 318.

The plaintiff in error contends that even if he were guilty of gross negligence it was not the proximate cause of the injuries to Miss McClurkin. He says that his excessive speed was only a remote cause and that the sole proximate cause was the conduct of Amory in driving his car from the

latter's right side into the path of his (Worcester's) car. The trial court submitted the issue of proximate cause to the jury. Unless we can conclude as a matter of law that there was no causal connection between the negligent conduct of Lieutenant Worcester and the injuries received by Miss McClurkin, we shall be compelled to approve the ruling of the trial court in submitting it to the jury.

There is evidence tending to show that the Amory car was only 150 feet away when it was driven abruptly into the path of the Worcester car and there is also evidence which discloses that within that distance it was humanly impossible for Lieutenant Worcester to have averted the collision. Notwithstanding those facts, we are unwilling to conclude, in the face of the verdict of the jury and the judgment of the court, which is presumptively correct, that the high speed at which Worcester was driving, his failure to see the Amory car until the impact and his failure to heed the insistent protests of Miss McClurkin, did not at least proximately contribute to her injuries, even though Amory was also grossly negligent.

In *Poole* v. *Kelley*, 162 Va. 279, 173 S. E. 537, we quoted this language which is found in *Grand Trunk Ry. Co.* v. *Ives*, 144 U. S. 408, 12 S. Ct. 679, 36 L. Ed. 485: "What may be deemed ordinary care in one case may, under different surroundings and circumstances, be gross negligence. The policy of the law has relegated the determination of such questions to the jury, under proper instructions from the court. * * * ." The same thing might be said of the question of proximate cause. Generally it is for the jury and there is nothing to remove the case at bar from the general rule. *Wallace* v. *Jones*, 168 Va. 38, 190 S. E. 82.

Failure to heed the protests of Miss McClurkin standing alone might not have amounted to gross negligence on the part of Lieutenant Worcester, yet the jury were entitled to consider it along with all of the other circumstances. We, therefore, think that Instruction 8 was properly refused.

It is assigned as error that the court permitted the plaintiff to bring a human skeleton into court and use it to

demonstrate to the jury the bone injuries which the plaintiff received as a result of the accident. While we do not sanction that practice in the trial of such cases, we do not think it was reversible error here. Generally, the question of whether or not such a demonstration should be made has been left to the discretion of the trial court. Exhibits of this character are analogous to the introduction of bloody garments and the like. *Carlson* v. *Kansas City, Clay County & St. Joseph Auto Transit Company*, 221 Mo. App. 537, 282 S. W. 1037; *State ex rel. Wenzel* v. *May*, 190 Minn. 336, 251 N. W. 529.

State Police Officer Anderson was permitted to read to the jury, over the objection of counsel for the defendant, the various speed regulations. These were contained in a pamphlet which already had been introduced by counsel for the defendant. He introduced the pamphlet for the single purpose of informing the jury of the various distances within which an automobile equipped with proper brakes might be stopped. The objectionable part which the court allowed to be read was, "31. What are the speed limits in the State of Virginia? * * * (e) Under all other conditions —forty-five miles per hour". Counsel contend that this was prejudicial because it was misleading and inaccurate for the reason that at that time 45 miles per hour was only *prima facie* evidence of reckless driving.

The entire pamphlet having been introduced by counsel for the defendant, we do not think they were in position to object to that part of it which fixed a speed limit of 45 miles per hour. However, the court removed all uncertainty by granting Instruction 9 which was in this language: "The court instructs the jury that driving at a speed in excess of 45 miles per hour is only *prima facie* evidence of reckless driving, and may be rebutted by evidence showing that a speed in excess of 45 miles per hour was not unreasonable or reckless under the actual conditions and circumstances then existing." We, therefore, conclude that there is no merit in that assignment of error.

Instruction B standing alone and without reading it in connection with the other instructions would probably be confusing. The language is not clear and the reference to the evidence is not entirely accurate. However, in our review of cases like the one at bar we are only interested in a discussion of errors which are reversible. The instruction, when considered with the others, probably did not prejudice the rights of the defendant. At most it was only harmless error.

We have carefully considered all other assignments of error and find in them nothing that would justify this court in overturning the verdict of the jury and the judgment of the court.

*Affirmed.*