# Richmond

JAMES WESLEY BARNES v. RUFUS J. BARNES, ADMINISTRATOR, ETC.

April 28, 1958.

Record No. 4770.

Present, All the Justices.

The opinion states the case.

*Vance M. Fry* (*S. Page Higginbotham*, on brief), for the plaintiff in error.

*Atwell W. Somerville* (*Somerville & Moore*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is an action for personal injuries growing out of an automobile accident, brought by James W. Barnes against the estate of his deceased brother J. Ellyson Barnes.

The motion for judgment alleged that plaintiff was a guest in the car owned and operated by defendant's decedent at the time of the

accident and that defendant's decedent was guilty of "gross and wilful and wanton conduct" in the operation of the car which caused the accident in which defendant's decedent was killed and the plaintiff injured.

The case proceeded to trial before a jury. At the conclusion of plaintiff's evidence defendant moved to strike on the ground that gross negligence had not been established. Burks Pleading and Practice, 4th ed., § 284, p. 506. The motion was sustained and a verdict for defendant returned, on which, over the objection of plaintiff, judgment was entered. To review the ruling we granted plaintiff a writ of error.

The sole question presented is: Did plaintiff's evidence establish gross negligence?

The record discloses that James and Ellyson Barnes were brothers living in the Mine Run community of Orange County. James, the plaintiff, was 21 years of age, single, a member of the armed forces, and was at home on furlough. Ellyson was 26 years of age, single, and was employed as a Crew Chief at Andrews Air Force Base, near Washington, D. C. He was home for the weekend. After returning from a fishing trip with their father on the afternoon of Saturday, August 20, 1955, the two brothers decided to drive to Colonial Beach. They made the trip in Ellyson's automobile, a new 1955 Hudson sedan; Ellyson being the driver.

They left Colonial Beach about 12:00 o'clock midnight for the return trip home. The weather was clear and the roads dry. The route home from Colonial Beach was through Fredericksburg, westwardly about 16 miles on Route 3 to its intersection with Route 20, thence left on Route 20.

The accident occurred about 1:15 a.m. on August 21, 1955, on Route 3, just east of the intersection with Route 20. There was no eye witness to the accident.

Trooper Johnson arrived at the scene about 3:30 a.m. He testified as to physical marks found on the ground, stating that apparently the car went across the center line of the hard surfaced portion of the highway, on to the left hand side, across the shoulder and down a three-foot embankment; thence along the embankment until it struck some fence posts near the intersection of Routes 3 and 20, and then struck the embankment of Route 20 intersecting from the left; after striking this embankment it came to rest upside down in the eastbound lane of Route 20, 38 feet from the embankment.

In the above described course of travel the car left tire marks commencing at the center line of the highway, for a distance of 37 feet to the edge of the hard surface on the left hand side. After leaving the hard surface the car travelled an additional 131 feet to the point where it struck the embankment of Route 20.

Ellyson Barnes was thrown from the car and killed instantly. James was also thrown from the car and severely injured. An inspection of the wrecked automobile two or three days after the accident disclosed that there was one front tire "down", and the brake pedal was observed to be bent over (not depressed) to the floorboard.

The trooper further testified that the legal speed limit at the point of accident was 55 miles per hour but there was a directional arrow for the curve and a 45-miles-per-hour maximum safe speed marker posted just east of the bridge and the curve near the point of accident.

Clifton Johnson testified that he lived "at the top of the hill", two-tenths of a mile from the scene of the accident; that he was in bed in his upstairs bedroom; that he looked out his window and observed an automobile pass on Route 3 in front of the window. He stated that the car was traveling "awful fast", "about 70 miles an hour", and that in "about three seconds" he heard the noise of the accident. He further said that the road in front of his house was straight and downhill; that he had no idea of the speed of the car at the time of the accident; that the only time he "knew anything about the speed" was when the car passed the window while he was in bed. He did not go to the scene of the wreck.

The nearest persons to the point of accident were the occupants of an automobile in which witness M. R. Pickett was riding. Pickett testified that the car which he was in was parked on the shoulder of the highway about 80 or 90 feet from the intersection of Routes 3 and 20, near the point of accident; that the car had been parked for at least a minute or possibly two minutes; that he was in the back seat and had opened the door and was getting out of the car when his attention was attracted to the Barnes automobile; that he heard no noise from the motor of the Barnes car as it approached and heard no tires "squealing"; that the first thing he heard was the striking of the posts and the shattering of glass followed by a thud when the Barnes car struck the embankment.

The plaintiff testified that he was asleep at the time of the accident; that his brother was driving in a proper manner before and at

the time he fell asleep, and that he knew nothing of the accident until he regained consciousness in the hospital.

Several other witnesses testified regarding marks on the ground but threw no additional light on the accident. In addition, five picture exhibits were introduced by plaintiff showing the road and territory surrounding the scene.

Negligence or gross negligence is never presumed. In this instance the burden was on the plaintiff to establish by a preponderance of the evidence that the deceased operated his automobile in such a manner as to show "an utter disregard of prudence amounting to complete neglect of the safety" of his guest. In our view this has not been done. Undoubtedly the driver lost control of the car but what caused this or when it occurred is not established, and we are not permitted to speculate on this material question. *Keen* v. *Harman*, 183 Va. 670, 675, 33 S. E. 2d 197, 198, 199.

The plaintiff relies on the physical facts testified to by the State Trooper, and upon the evidence of Clifton Johnson who testified that when the car passed his house, two-tenths of a mile from the scene of the accident, it was proceeding on a straight road, downhill, at a "fast" rate of speed, "about 70 miles an hour". To say the least, the circumstances surrounding this man's testimony and his opportunity to observe the speed of the car under the related conditions are unusual. Assuming this evidence to be credible, the witness was obviously correct when he stated that he "had no idea" of the speed of the car at the time of the accident.

While the physical facts as testified to by Trooper Johnson would justify the inference that the car was proceeding at a considerable speed, there is nothing to indicate that the speed itself was so great as to constitute gross negligence or that it was the proximate cause of the accident.

"It is a matter of common knowledge that if an automobile, traveling at fifty-five miles per hour, or less, gets out of control it may behave in a manner which seemingly defies all laws of physics and may be completely demolished when it strikes an immovable object." *Richter* v. *Seawell*, 183 Va. 379, 382, 32 S. E. 2d 62, 63.

No presumption of negligence can be gained from the mere happening of an accident. One who affirms negligence must establish it by a preponderance of the evidence, and such evidence must show more than the probability of a negligent act. An inference cannot

be drawn from a presumption, it must be founded upon some fact legally proven. (*Arnold* v. *Wood*, 173 Va. 18, 24, 3 S. E. 2d 374, 376.) Such proof is lacking in the instant case.

While gross negligence as well as simple negligence may be proved by circumstantial evidence (*Hackley* v. *Robey*, 170 Va. 55, 195 S. E. 689), in order for the plaintiff to prevail the evidence must show more than that the injuries complained of may have resulted from one of two causes, for one of which the defendant is responsible and for the other of which he is not. *Pearcey* v. *St. Paul Fire Ins. Co.*, 163 Va. 928, 931, 932, 177 S. E. 843; *Richter* v. *Seawell, supra,* 183 Va., at pp. 382, 383.

Considering the evidence and picture exhibits introduced, in order for the plaintiff to recover in this case, it would be necessary to resort to pure speculation, conjecture or guess as to the proximate cause of the accident and such is not permitted.

For the reasons stated the judgment of the trial court is

*Affirmed.*