## Richmond

ELMORE PAYTON GILL, JR. v. EDWARD LOUIS HAISLIP, AN INFANT, ETC.

June 13, 1960.

Record No. 5087.

Present, Spratley, Buchanan, Miller, Whittle, Snead and I'Anson, JJ.

The opinion states the case.

*John B. Browder* (*J. W. Morris, III; Leaman, Browder & Russell*, on brief), for the plaintiff in error.

*Harry P. Anderson, Jr.* (*David E. Satterfield, III; Satterfield, Anderson & Beazley*, on brief), for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

■ This is a guest-host automobile accident case wherein Edward Louis Haislip, an infant, by his mother and next friend, filed suit against his host, Elmore Payton Gill, Jr., for personal injuries. The motion for judgment charged sundry acts of gross negligence which the defendant by his answer denied.

The trial resulted in a jury verdict for plaintiff in the sum of $9,075, on which, over the objection of the defendant, judgment was entered. We granted a writ of error.

Several errors are assigned which will be treated in the order presented. However, the paramount question is whether or not the evidence is sufficient to establish that Gill was guilty of gross negligence in the operation of his automobile. § 8-646.1, Code, 1950.

The first assignment reads: "The Court erred in refusing to strike the evidence and to set aside the verdict because of the absence of any proof of gross negligence proximately causing the accident." This assignment requires a rather full statement of the evidence, and in this connection the plaintiff occupies a favorable position on appeal, as the conflicts in the testimony, which are many, have been resolved in his favor, and the evidence and all reasonable inferences to be drawn therefrom must be viewed in the light most advantageous to him. *Richardson* v. *Lovvorn*, 199 Va. 688, 692, 101 S. E. 2d 511, 514; Burks Pleading and Practice, 4th Ed., § 428, p. 837.

The record discloses that the plaintiff, young Haislip, and three companions—two brothers and a cousin—were walking home along Main Street in the City of Richmond, about 10:45 on the evening of

August 10, 1958, after having attended a picture show. They lived with plaintiff's mother and father at the home on Osborne Turnpike about three miles beyond the city limits. Plaintiff and defendant knew each other before the accident and knew where each lived in relation to the other. Defendant had given plaintiff a ride to his home on another occasion. Defendant lived on Church Road about half a mile beyond plaintiff's home.

Plaintiff testified that on the night of the accident he and his companions, upon invitation, got into defendant's automobile after being informed by defendant that he was on his way home. This was at the corner of Louisiana and Main Streets, about twelve blocks from where the accident occurred. The car was driven several blocks eastwardly on Orleans Street up to which time a Negro man had been driving. At this point the driver and the plaintiff and his companions alighted from the car. The defendant took the wheel and the plaintiff alone got back in the car, sitting in the front seat on the right of the driver. The vehicle was then turned right or south into Williamsburg Road, at a right angle intersection.

The defendant denied that a Negro was driving the car and stated that he did not pick up the plaintiff's companions but picked up only the plaintiff.

According to the plaintiff the car was at first driven by defendant at a speed of 35 to 40 miles per hour but later the speed was increased to 60 or 65 miles per hour. At this time the plaintiff discovered that the defendant had been drinking excessively and he asked him to slow down or let him out, whereupon the defendant accelerated his speed. As the car made the gradual curve into Hatcher Street the plaintiff saw the left door come open and the defendant apparently falling out; whereupon the plaintiff stated that he reached for the defendant and "that is all I remember."

On the other hand the defendant stated "I felt my front wheel kind of pulling to that side. And I put on my brakes a little more and I, the first thing I knowed I hit the telephone pole."

The physical evidence shows that the car negotiated the turn at Hatcher Street and struck a telephone pole on the right hand side of the street just past the end of the curve, practically demolishing the car.

The picture exhibits and the medical evidence show that the plaintiff was severely injured. His head went through the windshield of defendant's automobile. His jaw was broken in three places. There

was a "compound fracture of the left mandible in the region of the symphysis", that is, "between the lateral and cuspid tooth extending inferiorally through the alveolar and body of the mandible." He suffered the following lacerations: "A through and through laceration, extending from beneath the right left eye into the mouth, and including the skin and mucuous membrane," "extensive lacerations beneath the chin", "a laceration of what we consider the right cheek bone." For a period of approximately six weeks plaintiff could not open and close his mouth and had to live on "liquids and puree foods."

Defendant testified that he was running "about 15 miles an hour" as he "started into the turn" at Hatcher Street. On the other hand the plaintiff testified that he looked at the speedometer "before he got to Hatcher Street" and saw that the defendant "was going practically 60 or 65 miles per hour" as he came into the Hatcher Street curve. The defendant denied that plaintiff asked him to slow down or let him out. Plaintiff, on the other hand, testified: "I told Buddy Gill to slow down or let me out". When questioned about this on cross-examination plaintiff explained: "When I told him to slow down or let me out, he stepped on the accelerator, just like he stepped on the accelerator that much more."

The defendant denied that he was intoxicated, testifying that he had had "two bottles of beer" about seven o'clock that evening; whereas he stated to the police officer at the scene of the accident that "he had had four or five beers since 4:00 o'clock that afternoon."

The investigating officer testified that defendant "was definitely intoxicated * * * had a heavy odor of alcohol on his breath * * * was unsteady on his feet * * * his eyes were red," and "he would not respond to my questions as a person would normally do."

On cross-examination the defendant denied that he had entered a plea of guilty to the charge of careless and reckless driving in the Richmond Traffic Court; whereas the investigating officer, without objection, testified that the defendant did plead guilty to the charge and was convicted therefor.

The plaintiff relies substantially on five acts of negligence. They are: Drunkenness; deliberately accelerating his automobile when requested to slow down or let the plaintiff out; not keeping a proper lookout; not keeping his car under proper control; and going from Williamsburg Road into Hatcher Street at a speed of 60 or 65 miles per hour.

We have held that gross negligence is not decided on the basis of

what or how many acts of negligence have been proved but rather upon whether such act or acts show such utter disregard of prudence as to constitute total indifference and complete disregard for the safety of the guest. *Doerr* v. *Barnes, Adm'r,* 198 Va. 306, 310, 94 S. E. 2d 271, 274.

Defendant contends that plaintiff's version of how the accident occurred is incredible. He insists that had the car entered Hatcher Street from Williamsburg Road traveling at a speed of from 60 to 65 miles per hour, as testified to by plaintiff, it would have turned over. The evidence and exhibits show that the curve into Hatcher Street is a gradual curve. On the facts presented it was a jury question as to whether or not the defendant was guilty of gross negligence on the occasion. The jury had a right to accept plaintiff's version of what transpired rather than to believe that the defendant at the time was only driving at a speed of 15 miles per hour as he entered Hatcher Street. Under these circumstances the court did not err in presenting the question of gross negligence to the jury. *Mitchell* v. *Wilkerson,* 193 Va. 121, 67 S. E. 2d 912.

The second assignment of error, says the defendant, poses the question as to whether the testimony of a police officer was sufficient to prove that the accident in question occurred in a 25-mile speed zone. In this connection Police Officer Hayden testified that there were 25-mile zone signs posted in the vicinity of the accident. There was no objection to this evidence being admitted. However, as will be shown under Assignment No. 6, defendant objected to the court so instructing the jury. There it is contended by the defendant that these signs were too remote from the scene of the accident to have any probative value. We see no necessity for considering this issue as it is immaterial. The defendant contended that at the time of the accident he was driving between 15 and 20 miles per hour which was within the limits of the lawful speed at that point; whereas the plaintiff contended that the speed of the car was between 60 and 65 miles per hour which was in excess of the 35-mile-per-hour zone which the defendant contends for.

The third assignment, defendant says, presents the question "whether a plaintiff, ready, able and willing to return to work six weeks following an accident may prove that his employer would not take him back on his job." The question does not take into consideration the facts disclosed by the record. The plaintiff had been working for a few weeks prior to the accident for Larus and Brother Tobacco

Company, and after being disabled by the accident, on account of lack of seniority, he was unable to retain his job. The company could not hold the job open longer than two weeks. The evidence shows that the plaintiff was unable to return to work until the end of six weeks, and the court, by Instruction No. 4, paragraph 3, limited the jury's consideration of his loss of wages to six weeks. We see no merit in this assignment.

■ Neither do we see any merit in the 4th assignment which defendant says raises the question "was it proper for a teacher at a barber school to testify to the attributes of a successful barber." This question does not properly state the issue involved. After partial recovery from the accident plaintiff attended a barber school, and the record discloses that a teacher at the school was testifying regarding the physical disfigurement of the plaintiff. He testified to the effect that a barber should make a good appearance. Undeniably the plaintiff was disfigured, and the evidence was directed more to the teacher's observation of plaintiff's physical appearance which was a proper element of damages.

■ The fifth assignment deals with a question asked Dr. Bear, an oral surgeon, by counsel for plaintiff, which dealt with the probability of traumatic arthritis later developing as a result of the accident. In the first place no proper exception was taken to the question, and in the second place it was shown to be harmless when the doctor responded, "I cannot give any answer to that."

The sixth assignment, defendant says, poses the question "should the court have instructed the jury that the speed limit at the scene of the accident was twenty-five miles per hour." This assignment deals with the propriety of the court giving Instruction No. 2.[1] The only objection offered to the instruction was: "The defendant objects and excepts to the giving of Instruction No. 2 in that it refers

---

[1] The Court instructs the jury that at the time and place of the accident it was the duty of the defendant to exercise slight care for the safety of the plaintiff, or that degree of care which a person of ordinary prudence exercising slight care for the safety of others would have exercised under the same or similar circumstances, particularly in regard to lookout, speed, in no event in excess of 25 miles per hour, and control of the automobile.

If you believe by a preponderance of the evidence that the defendant failed in the performance of the duty mentioned, in any particular, then he was guilty of gross negligence, and if you further believe from a preponderance of the evidence that such gross negligence, if any, constituted the sole proximate cause of the accident, then you will find your verdict for the plaintiff and fix his damages in accordance with the instruction on damages.

to a speed in excess of 25 miles per hour, and there being no evidence upon which the court could hold that the speed limit at that particular point of the accident was 25 miles per hour." There was no objection to the second paragraph of the instruction. While we do not approve the phraseology of the second paragraph, no proper exception was taken thereto. The objection to the first paragraph of the instruction has heretofore been treated under Assignment No. 2 and found to be without merit.

The remaining assignments of error deal with the court's refusal to give Instructions "C", "D", "H", and "I", offered on behalf of the defendant. These instructions were properly refused by the court. There was no evidence upon which to base them. The jury was fully instructed on all issues.

We see no reversible error in the case, and the judgment is

*Affirmed.*