# Richmond

ALBERTA T. SCOTT v. CAROLYN M. FOLEY.

June 15, 1964.

Record No. 5726.

Present, All the Justices.

*William F. Stone* (*Charles L. McCormick, III; Joyce & Stone*, on brief), for the plaintiff in error.

*R. Reid Young, Jr.* and *Douglas K. Frith* (*Young, Kiser & Frith*, on brief), for the defendant in error.

CARRICO, J., delivered the opinion of the court.

Carolyn M. Foley, the plaintiff, filed a motion for judgment against Alberta T. Scott, the defendant, seeking to recover damages for personal injuries sustained by the plaintiff while a guest passenger in a vehicle operated by the defendant. A jury trial resulted in a verdict in favor of the plaintiff in the sum of $18,000.00, which received the approval of the trial court.

The defendant was granted a writ of error which presents the crucial question of whether there was sufficient evidence establishing the defendant's gross negligence to sustain the verdict of the jury.

The accident in which the plaintiff received her injuries occurred at approximately 11 a. m., September 24, 1962, on a clear, dry day on State Route 57, in Henry County. Route 57, in the area of the accident scene, runs generally east and west, is level, is marked by double solid lines and is two lanes wide with a three-foot paved shoulder added to the traveled portion on each side. The accident took place after the defendant had rounded a curve to her right, as she was proceeding in a westerly direction, just past Harmon Brothers service station.

On the morning of the accident, the defendant, accompanied by her four-year-old daughter, drove Doris Scott Wilson to Fieldcrest Mills to enable Mrs. Wilson to apply for employment. There they met the plaintiff, who was at the mill for the same purpose. Later in the morning, the defendant drove the other three persons to Garfield's Drive-In Restaurant, located .2 mile east of the accident scene, for lunch. The plaintiff testified that on the trip from the mill to Garfield's, the defendant drove, "in a perfectly normal manner."

The four left Garfield's together, with the defendant driving, to return the plaintiff and Mrs. Wilson to the mill. The three adults were seated in front with the plaintiff on the far right, and the little girl was seated in the rear.

The plaintiff was asked by her counsel to tell what happened from the time she left the restaurant with the defendant until the accident occurred. She testified that when the defendant left the restaurant, she, "kept the car in low, then put it in second, and still had it in second just before we got to the service station. She said, 'I'm going to give Clyde something to tell Keith about.' " The plaintiff stated, "I didn't see her, but from the way she talked, she had her head turned toward the service station."

The plaintiff explained that "Clyde" was one of the owner-

operators of the service station and that "Keith" was the defendant's husband.

The plaintiff testified further that the defendant then, "ran off the road . . . still in second . . . driving . . . between fifty and sixty." The plaintiff stated that she said to the defendant, "Alberta", then the defendant, "jerked the car and the car started going out of control."

The plaintiff, on cross-examination, testified as follows:

"Q. You felt the car wasn't being operated properly?

"A. I noticed it was unusual because Alberta started out the way she did.

"Q. She wasn't driving the way you thought she ought to?

"A. I noticed it wasn't the way I started my car out. I didn't realize what was going on until she said, 'I am going to give Clyde something to tell Keith.' "

Clyde Harmon, near whose service station the accident occurred, testified as a witness for the plaintiff. He said that he was facing the highway, saw the defendant's automobile when it pulled out of Garfield's Restaurant and kept it in his sight until the accident occurred. He stated that the defendant drove "perfectly normal", on her side of the road, at a proper rate of speed; that when she glanced toward the service station her right wheels ran off of the road, and that she then proceeded 106 feet and struck some "chuck holes." This witness further said that the defendant was driving between 40 and 50 miles per hour when she ran off the road and that, "when she hit the hole, she lost control of the car. When it came back on the road, it looked like it made an 'S' circle and turned over . . . on the hard surface road." Harmon explained that, "when you run off the road you still have three feet paved . . . ."

State Trooper Cassell, who investigated the accident, testifying for the plaintiff, described the holes in the paved shoulder on the defendant's right-hand side of the road. He said that he found skid marks leading from one of the holes 6 steps to the left-hand side of the road, 25 steps on the left-hand side, 20 steps back to the right shoulder, 22 steps on the shoulder back to the hard top and 8 steps to where the vehicle overturned on the hard-surface. He further stated that he saw fresh tracks on the shoulder leading up to the hole, but he could not connect them with the defendant's automobile.

The trooper testified that the speed limit in the area was 45 miles per hour and that, in investigating the accident, he did not find any evidence of speed on the defendant's part. Finally, the officer said

that when he asked the defendant, "what caused her to wreck", she told him that, "as she came by the service station some man she knew—she looked over there momentarily—when she did she hit this hole—a right deep hole there on the edge of the road—when she hit that, she lost control."

Lee Fain, upon whose testimony the plaintiff places great reliance, was the plaintiff's final witness. He said that he was standing beside the road in front of his place of employment, 100 yards from Garfield's Restaurant, or approximately 750 feet from the scene of the accident. He stated that he saw the defendant's vehicle leave the restaurant, "in low gear, it sounded like it was wide open . . . the wheels would screech and cry" and that as it passed him, it, "crossed the double yellow line to the left-hand side for about a hundred feet—came back across to the right with two wheels off—ran back across over the double line on the left-hand side—looked like she put it in second gear and hit overdrive."

Fain was asked if he saw the defendant's vehicle run off the road, again referring to what happened in front of him. He replied:

"Yes, with two wheels, then went clean back on the right side, crammed it in second gear, hit overdrive, if it had overdrive—the way it jumped."

Fain was asked if he saw "the car wreck", to which he replied, "I heard it crash." He further testified that when the vehicle, "ran off the road at Harmon Brothers" it was traveling, "in my opinion about sixty-five . . . still in second gear."

The defendant, testifying in her own behalf, insisted that she was driving properly and did not lose control of her car until it struck the "chuck hole", the presence of which was unknown to her. Her passenger, Mrs. Wilson, and two other witnesses who were standing in the service station, corroborated her version of the accident.

Photographic exhibits were introduced showing the stretch of highway along which the defendant traveled from Garfield's Restaurant to the curve past which the accident occurred. Photographs also depicted the paved strip adjoining the highway and the deep chuck holes in the strip.

The plaintiff was entitled to recover if she showed by a preponderance of the evidence that her injuries were, "caused or resulted from the gross negligence or willful and wanton disregard of" her safety on the part of the defendant. Code, § 8-646.1.

Gross negligence, which was the basis of the plaintiff's claim as-

serted in her motion for judgment, as it is defined in *Rigney* v. *Neauman,* 203 Va. 822, 826, 127 S. E. 2d 403:

".. . [I]s that degree of negligence which shows an utter disregard of prudence amounting to complete neglect of the safety of another, such as to be shocking to reasonable men. Whether it has been proved depends on the facts and circumstances in each case. If the evidence is such that reasonable men should not differ as to what is proved, the question is one of law for the court."

It is the defendant's contention, as stated in her brief, that, "the plaintiff's evidence is insufficient in law to prove gross negligence on the part of the defendant, and therefore said evidence is insufficient to support the verdict."

It is the plaintiff's position, on the other hand, that the defendant's manner of operation of her vehicle as she drove from Garfield's Restaurant to the accident scene constituted gross negligence.

The plaintiff concedes that the defendant lost control of her vehicle after, "striking chuck holes in the shoulder." There was no contradiction of the defendant's testimony that she did not know of the presence of the holes. The crucial inquiry, therefore, is whether the evidence shows that the defendant's operation of her vehicle was grossly negligent *before* she struck the holes.

The testimony given by the plaintiff, considered alone, fails to sustain her charge of gross negligence against the defendant. The plaintiff's testimony does not convict the defendant of "complete neglect of the safety" of the passengers in the automobile. *Sibley* v. *Slayton,* 193 Va. 470, 477, 69 S. E. 2d 466.

The plaintiff's testimony shows merely that the defendant started out from the restaurant at a fast, but unknown, rate of speed in low gear; that she then drove in second gear for .2 mile without incident and without complaint from the plaintiff; that, as a result, *perhaps,* of turning "her head toward the service station", the defendant ran onto the paved shoulder, while driving at a speed of 50 to 60 miles per hour, and then struck the "chuck holes", causing her to lose control of the vehicle.

The plaintiff seeks to superimpose upon her testimony the statement concerning "Clyde" and "Keith" and thus convert the defendant's actions into "horseplay." The plaintiff then argues that the rule of *Williams* v. *Morris, Administratrix,* 200 Va. 413, 105 S. E. 2d 829, applies. In that case, we held that the gross negligence of the defendant there was shown by evidence that he, "attempted to race or outrun" another vehicle and on three occasions, "attempted to bump or

'nudge'" the other automobile, and while thus "engaging in horse-play", lost control of his car.

The facts in the *Williams* case are radically different from those in the case at bar. The statement attributed to the defendant here cannot have the effect of proving that she intended to "show off", as the plaintiff puts it, and thus deliberately set out to drive dangerously, especially when it is considered that her own four-year-old daughter was seated in the rear of the automobile. The statement, the making of which was denied by the defendant and her other adult passenger, Mrs. Wilson, was totally unexplained. It would be pure speculation to say that it related to something that the defendant was going to do in the operation of her vehicle.

When the testimony of the plaintiff is considered along with that of her witnesses, Trooper Cassell and Clyde Harmon, a case of gross negligence is still not made out. In fact, these witnesses, and especially Clyde Harmon, corroborate the version of the accident given by the defendant and her witnesses, and exonerate her of gross negligence.

█ It is only when the plaintiff's testimony is considered along with that of her witness, Lee Fain, that it can seriously be contended that the charge of gross negligence was made out against the defendant. The plaintiff appears to accept the proposition that, without the testimony of Fain, she has no case. Throughout her brief, whenever she recites the facts upon which she relies to sustain her case, the things to which Fain testified are always essentially stressed.

But, the defendant argues, the plaintiff is not entitled to rely on Fain's testimony because it is so at variance with her own testimony, by which she is bound. The defendant also charges that Fain's testimony is inherently incredible.

We need not decide whether Fain's testimony is inherently incredible because the plaintiff must be denied the right to rely on his testimony pursuant to a rule of fairness which is an accepted part of our law relating to personal injury cases. That rule, as expressed by Mr. Justice Eggleston, now Chief Justice, in *Crew* v. *Nelson*, 188 Va. 108, 114, 49 S. E. 2d 326, is that:

". . . [I]n a personal injury case, if the plaintiff, a person of average intelligence and in possession of his faculties, while detailing the circumstances of the accident, clearly and unequivocally testifies to facts which show as a matter of law that he has no case, he is bound thereby and cannot recover."

It will be remembered that Fain testified that when the defendant's

vehicle passed the position where he was standing, approximately 750 feet from the scene of the accident, he saw the vehicle being operated on the wrong side of the road; saw it run off the road either on the left-hand side or the right-hand side, or both; heard the wheels "screech and cry", and then saw the vehicle run off the road in front of the service station and was able, at that distance away, to say that it was going 65 miles per hour and was in second gear.

But the plaintiff neither saw nor heard the things that Fain said he saw and heard, although she was in the vehicle in a better position than Fain to see and hear all that took place. She claimed no loss or lapse of memory, she obviously was attentive and she was most essentially interested. She offered no explanation as to why, if the accident occurred as Fain said that it did, her version should be so at variance with his.

The statement given to the jury by the plaintiff detailed the path and manner of operation of the vehicle from the time it left the restaurant until the accident occurred. Her testimony contradicted and was in conflict with that of Fain. It negated the charge of gross negligence.

The plaintiff cannot expect the court to discard her testimony and look only to Fain's in an effort to rescue her failing cause of action. Her case can be no stronger nor rise any higher than her own testimony permits. Her testimony was clear and unequivocal and was given with full knowledge of all the facts. It is conclusive as to the manner in which the defendant operated her vehicle. That manner was characterized by the plaintiff as merely "unusual." That is not sufficient to sustain a finding of gross negligence. *Rigney* v. *Neauman, supra,* 203 Va., at p. 826; *VEPCO* v. *Mabin,* 203 Va. 490, 493, 125 S. E. 2d 145; *Crew* v. *Nelson, supra,* 188 Va., at p. 114; *Virginia Electric Co.* v. *Vellines,* 162 Va. 671, 679, 175 S. E. 35.

Accordingly, the judgment of the trial court is reversed, the verdict of the jury is set aside and final judgment is here entered in favor of the defendant.

*Reversed and final judgment.*