# Richmond

WILLIAM FREEMONT HARRIS v. MARGARET SIMMS HARRIS.

November 30, 1970.

Record No. 7179.

Present, All the Justices.

*Francis W. Flannagan (James A. Boyd; Woodward, Miles & Flannagan,* on brief), for plaintiff in error.

*Stuart B. Campbell, Jr. (Robert I. Asbury; Campbell and Campbell,* on brief), for defendant in error.

HARMAN, J., delivered the opinion of the court.

This action was instituted by motion for judgment against William Freemont Harris and John Doe, an unknown motorist, to recover damages for the personal injuries sustained by plaintiff, Margaret Simms Harris, in an automobile collision.

A nonsuit was taken as to John Doe before trial and the action proceeded to trial with William Freemont Harris as the only defendant.

A jury returned a verdict for the plaintiff in the amount of $3,700.00 and the trial court entered final judgment on the verdict. We granted a writ of error and *supersedeas* to review this judgment.

The decisive issue before us on appeal is whether there was suffi-

cient evidence to support a finding of negligence on the part of the defendant.

Plaintiff was injured when the car in which she was riding struck a bridge abutment. Her son, the defendant, was the owner and driver of this car.

Only four witnesses testified at trial about the facts and circumstances surrounding the collision.

The accident occurred at approximately 4:15 p.m. on June 21, 1965, on U.S. Route 19-460 approximately 1/10 mile northeast of Tazewell, Virginia, as plaintiff, her son and her daughter-in-law were returning to their homes in Smyth County from Princeton, West Virginia, where they had attended the funeral of a relative. Defendant was driving the car and his wife was riding on his right in the front seat. Plaintiff was seated on the right side of the back seat of the car.

The highway in the vicinity of the bridge is a two-lane "blacktop" road 20 feet in width. The weather was cloudy and the road surface was dry. A motorist proceeding in a southwesterly direction toward Tazewell, as was the defendant, would negotiate a curve to his right approximately 900 feet northeast of the bridge with which defendant collided. Beyond this curve the road is level and straight to a point near the bridge. There is a shoulder approximately 10 feet wide covered with gravel on each side of the pavement. The shoulders angle in sharply and terminate at the bridge abutments. The road curves slightly to the left just before crossing the bridge and after crossing it curves sharply to the left. Trooper A. W. Stockner, who investigated the occurrence, described the scene as an "S-type curve with a straightaway in the middle of it more or less . . . the straightaway is some eight or nine hundred feet."

The bridge is 23 feet 6 inches wide. Signs, approximately 30 inches square with black and white stripes running at an angle, are mounted at the bridge abutments. The posted speed limit in the area is 55 miles per hour. Approximately 4/10 of a mile northeast of the bridge there was a highway sign which read "Maximum Safe Speed 50."

Trooper Stockner, who arrived at the scene approximately 10 minutes after the wreck, found a mark, 180 feet in length, in the gravel on the shoulder of the road leading to the right rear tire of defendant's car which was still resting against the bridge abutment. The trooper testified that this mark was not a skid mark but was "the type mark you see where a vehicle passes through the gravel." It began

where defendant's right rear tire "dropped off the edge of the pavement and came along the shoulder up to the rear of the car."

Plaintiff testified that her son was driving at a "moderate speed" and, so far as she knew, "in a careful and cautious manner." She "didn't notice anything wrong with his driving" and he had done nothing to cause her to object to the manner in which he was driving. She further testified that as they approached the bridge she did not notice any other traffic until her attention was suddenly drawn to a black car with a light colored or cream top traveling in a northeasterly direction toward Bluefield. This car, when she first saw it, was "almost all the way on our side of the road" and was "right on us."

When asked what action was taken by her son to avoid a collision with the oncoming car, plaintiff "suppose(d) that he dropped over the side of the road and was as far over as he could away from it." She "assumed" that he took this action to avoid hitting the oncoming car. When asked "As far as you know, did you consider the action which your son took necessary in order to avoid a collision with this oncoming car?" plaintiff replied "The way I see it, yes sir."

Bill Arnold, called as a witness by plaintiff, testified that he had traveled approximately 200 feet behind defendant's car from Bluefield to the place where the wreck occurred. He placed defendant's speed at approximately 55 to 60 miles per hour. Arnold said that on two occasions prior to the collision defendant had "run off" the pavement on to the right shoulder of the road. His description of the collision was "when he got to the bridge, he ran off the shoulder of the road and right straight into the bridge. I never did see a taillight or anything come on, so apparently he didn't hit his brakes or anything." After the collision Arnold asked defendant "what happened and he said he looked over at his wife and looked back up, he was done into the bridge." Arnold testified that he observed no other cars in the vicinity of the bridge at the time of the occurrence. When asked if another car could have been present he said "Yes . . . but I don't see how there could have been another car there and me that close behind him and me not see him on a two-lane highway."

Defendant testified he was about 100 feet from the bridge and proceeding at a speed of between 50 and 55 miles per hour when he met a 1955 model black Chevrolet with a cream or white top which was partly in his lane. He did not apply his brakes but cut to his right to avoid a collision with the oncoming car, at least half of

which was in his lane. He related that he attempted to cut back onto the road but struck the bridge abutment because he was closer to the bridge than he realized. There was no contact between his car and the black and white Chevrolet. He further testified that the Chevrolet did not stop at the scene but proceeded on in a northeasterly direction toward Bluefield.

Defendant denied making the statement attributed to him by Arnold in Arnold's earlier testimony.

Plaintiff's account of the accident exonerates defendant of negligence and nothing in defendant's own testimony establishes negligence on his part. The crucial question, therefore, is whether plaintiff can rely on the evidence of Arnold to establish negligence on the part of defendant.

A fair reading of plaintiff's testimony as a whole shows that the proximate cause of the accident in which she was injured was the negligence of the driver of the black and white car "almost all the way on our side of the road" when it was "right on top of us."

We find it impossible to reconcile this testimony which was positive, clear and unequivocal with that of Arnold who saw no black and white car even though that car had to pass within a few feet of him as it traveled toward Bluefield.

Plaintiff, in these circumstances, cannot expect the court to disregard her testimony. Her case can be no stronger nor rise any higher than her own positive, clear and unequivocal testimony permits. See *Crawford and Perdue* v. *Quarterman*, 210 Va. 598, 172 S.E.2d 739 (1970).

Since plaintiff is bound by her own testimony which is in irreconcilable conflict with that of Arnold, she must be denied the right to rely on Arnold's testimony pursuant to a rule of fairness which is an accepted part of our law relating to personal injury cases. *Scott* v. *Foley*, 205 Va. 382, 136 S.E. 2d 849 (1964).

Plaintiff must be denied the right to rely on Arnold's testimony. We hold, therefore, that the evidence, and all reasonable inferences therefrom, is insufficient to create a jury issue on the question of negligence. The jury verdict is set aside, the judgment below is reversed and final judgment will be entered here for the defendant.

*Reversed and final judgment.*