# Richmond

Martha Opal (Burke) Laster, Executrix, Etc. v.
Rebecca M. Tatum.

January 17, 1966.

Record No. 6061.

Present, All the Justices.

*Norman F. Slenker* (*Duff & Slenker*, on brief), for the plaintiff in error.

*Alfred L. Hiss* (*George H. V. Cooper; Hiss & Rutledge*, on brief), for the defendant in error.

GORDON, J., delivered the opinion of the court.

The plaintiff, Rebecca M. Tatum, was injured when an automobile in which she was riding struck a tree on the side of a private road. This appeal is from a judgment for $15,000 entered for her against the executrix of Raymond David Burke, the driver of the automobile.

We should consider, first, whether the evidence brought forth at the trial, viewed most favorably to the plaintiff, was sufficient to sustain the jury's finding of gross negligence, proximately causing the accident. Indeed, a finding that the evidence was not sufficient will end our inquiry, since the guest-passenger's judgment can stand only if there was sufficient proof of gross negligence and proximate cause (Va. Code Ann. § 8-646.1 (Repl. Vol. 1957)).

The accident happened August 13, 1962 on Seeger's Lane, after the plaintiff and Burke had attended a party at the Seeger home.

The evidence discloses that Seeger's Lane is blacktopped, winding, and relatively narrow—when compared to a state road—but sufficiently wide to permit two cars to pass if care is exercised. The road slopes downward from the Seeger home, on a bluff overlooking the Potomac River, to the scene of the accident; but the grade is not disclosed by the testimony. There is a steep ravine on the right side of the road, at the scene of the accident.

Neither the plaintiff nor Burke had visited the Seeger home before the night of the party. Going to the party, Burke drove slowly after leaving the county road and while traveling on Seeger's Lane. It was dusk and, according to the plaintiff, "that was dangerous"; also, "we [the plaintiff and Burke] didn't know where we were going, and we didn't know what to expect and we didn't know where the house was". The plaintiff and Burke "discussed how treacherous the road [Seeger's Lane] was, going to the Seeger's house".

After attending the party, the plaintiff and Burke left the Seeger home shortly after midnight. The plaintiff described the party, celebrating the twenty-fifth wedding anniversary of William R. Walker and his wife, as "just a family-type party, because his [Walker's] two teen-age children were both there". Nothing else need be said about the party or the plaintiff's and Burke's activities while at the Seeger home. The plaintiff testified that she was not afraid to ride with Burke, and there is no evidence that Burke had been adversely affected by drink or, for any other reason, was in unfit condition to drive the automobile.

Leaving the immediate vicinity of the Seeger home, Burke put

his foot on the accelerator "just a little more than he should have"—"he sort of gunned the car, to leave". (Nevertheless, the tires did not squeal, according to the plaintiff's recollection at the trial.) The plaintiff, who was sitting in the right front seat of the two-door automobile, then looked at the speedometer. It registered about 35 miles an hour, and she asked Burke to slow down. He removed his foot from the accelerator, but the plaintiff testified "he still maintained the speed" and "the car did not necessarily slow down", because it was going downhill. The plaintiff was unable to state how far they traveled at 35 miles an hour. She said "not very far, but he didn't reduce it [the speed] very much".

At some point, Burke turned to look at the plaintiff. (Burke was in a happy mood; the plaintiff had agreed to marry him within a few weeks, and he had just seen the happiness afforded by a successful marriage.) According to the plaintiff, she "turned in the seat at that time so that he could see me, so that he could have his eyes on the road", and she asked him "to watch where he was going". Also, she asked him again "to slow down".

The automobile left the road on a curve, described as a sharp curve, about 200 yards from the Seeger home. It traveled an undisclosed distance before its movement was stopped by a tree. When William R. Walker, who had left the Seeger home shortly after the plaintiff, arrived at the scene of the accident, "the car was up against the tree, partially"—"it was turned up at an angle against the tree". "The tree had kept it from falling on down the hill". Walker explained "the land falls off there" [on the right side of the road, where the car came to rest]; "it falls off rather sharply, and the tree sits—the roots of the tree are below the level of the road." Walker did not notice whether the left wheels of the automobile were off the road.

According to the plaintiff, the right side of the automobile "took the bark off" the tree. The pictures introduced in evidence show that the right door of the automobile struck the tree. The glass on this door was broken, and the windshield was shattered at the right side.

The plaintiff's right arm was severely cut and there were abrasions on other parts of her body, apparently caused by broken glass. Her head was bruised by striking the top of the car.

Burke died before trial of this case, from a cause unrelated to the accident, and the plaintiff was the only living eyewitness. She was unable to estimate the speed of the automobile as it approached the

curve. She said only "I knew it was faster than it should have been"; "[that] is my opinion. I have got scars to prove it".

When asked why the automobile ran off the road, the plaintiff said, "I wish I could answer that. It ran off the road, mainly, because he was going too fast". At another point in her testimony, the plaintiff admitted that she did not know why the automobile ran off the road.

■ "Gross negligence" was properly defined in this instruction given by the trial court:

"Gross negligence is not to be presumed from the mere happening of an accident.[1]

"Gross negligence is defined as conduct showing such indifference to others as constitutes an utter disregard of prudence amounting to complete neglect of the safety of the plaintiff guest, that is, such a degree of negligence as should shock fair minded men although something less than wilful recklessness." [2]

The question is whether Burke's conduct could constitute gross negligence, as so defined. And in testing the evidence against the definition, we should bear in mind that Burke's actions are pertinent only if they were shown to have had a causal connection with the accident. The plaintiff can recover only if the jury was justified in finding that Burke's gross negligence (if any) was the proximate cause of the accident.

■ Plaintiff's counsel relies upon Burke's failure to keep a proper lookout, in that he directed his attention to the plaintiff while driving down Seeger's Lane. But the evidence does not support a finding that Burke's looking at the plaintiff, instead of at the road ahead, contributed to the accident. The plaintiff's testimony negated any inference of a causal connection. She said she "turned in the seat . . . so that he could see me, so that he could have his eyes on the road". She did not say that this occurred near the scene of the accident, or that Burke, after she turned in the seat, did not "have his eyes on the road". The plaintiff is relegated, then, to excessive speed as the basis for sustaining a finding of gross negligence.

The plaintiff testified that Burke drove at a speed of 35 miles an hour after leaving the Seeger home, but she was unable to give the speed of the automobile as it approached the curve where the accident happened. The evidence disclosed the physical characteristics

[1] Barnes v. Barnes, Adm'r, 199 Va. 903, 103 S.E.2d 199 (1958).

[2] Scott v. Foley, 205 Va. 382, 136 S.E.2d 849 (1964); Bond v. Joyner, 205 Va. 292, 136 S.E.2d 903 (1964).

of Seeger's Lane and the fact that it was dark at the time of the accident. Also, the jury viewed the scene of the accident during the trial. But there was no evidence of any posted sign, nor was there any testimony, that indicated what might be deemed a reasonable speed on Seeger's Lane.[3] Even if the jury could have properly inferred that as the automobile approached the scene of the accident, it was traveling 35 miles an hour, and if the jury could have properly concluded that this was not a reasonable speed under the circumstances, nevertheless the evidence afforded no basis for determining that to travel at this speed, at this time and place, amounted to complete neglect of the safety of the plaintiff-guest.

The result is the same whether the jury accepted the plaintiff's admission that she did not know why the automobile ran off the road, or her statements that "it ran off the road, mainly, because he was going too fast"—"I knew it was faster than it should have been"; "[that] is my opinion. I have got scars to prove it".

If her admission be accepted, the cause of the accident is left to conjecture, and a finding of gross negligence cannot be based upon conjecture. *Barnes* v. *Barnes, Adm'r, supra* (footnote 1); see *Canupp* v. *Wade*, 205 Va. 850, 140 S.E. 2d 659 (1965), and *Weddle, Adm'x.* v. *Draper*, 204 Va. 319, 130 S.E. 2d 462 (1963), dealing with ordinary negligence.

Under the other version, the jury could have based its finding of gross negligence only upon the plaintiff's conclusion that Burke was driving "too fast". She based this conclusion upon the happening of the accident, but, as properly explained in the court's instruction to the jury, gross negligence cannot be inferred from the mere happening of an accident. Moreover, merely driving "too fast" does not constitute gross negligence. *Rigney* v. *Neauman*, 203 Va. 822, 127 S.E. 2d 403 (1962); *Barnes* v. *Barnes, Adm'r, supra; Sibley* v. *Slayton*, 193 Va. 470, 69 S.E. 2d 466 (1952).

We hold that the evidence in this case was insufficient as a matter of law to show Burke's gross negligence. This conclusion is dictated by *Scott* v. *Foley, supra* (footnote 2), and *Sibley* v. *Slayton, supra*, which involved similar factual situations.

In *Scott* v. *Foley, supra*, the automobile, which was being driven

---

[3] Walker testified that he drove down Seeger's Lane at a speed of 10 or 15 miles an hour after leaving the party, but his testimony does not purport to indicate the maximum reasonable speed. Walker did not even indicate whether he drove 10 or 15 miles an hour of his own choice or because of the speed of his wife's automobile, which he was following. The distance between the two vehicles was not disclosed by the evidence.

by the defendant at a speed of 50 to 60 miles an hour in a 45 mile an hour zone, left the highway and struck "chuck holes" on the paved shoulder. The defendant lost control, and the plaintiff, a guest-passenger, was injured when the automobile turned over. This Court reversed the judgment for the plaintiff, holding as a matter of law that the evidence was insufficient to support the jury's findings of gross negligence.

In *Sibley* v. *Slayton, supra,* a pickup truck ran off the road on a curve and struck a hole three feet from the edge of the hard surface. The driver lost control, and a guest-passenger was killed when the truck struck a tree. The defendant was traveling too fast to keep his truck on the road, but there was no evidence that he had exceeded the speed limit. We held the evidence insufficient to prove gross negligence.

Accordingly, the court erred in failing to sustain the motion of the defendant, Martha Opal (Burke) Laster, executrix of Raymond David Burke, to strike the evidence of the plaintiff, Rebecca M. Tatum, and enter summary judgment for the defendant. Final judgment for the defendant will be entered here.

*Reversed and final judgment.*