ROMANESK *v.* ROSE

[No. 29, September Term, 1967.]

*Decided January 8, 1968.*

The cause was argued before HAMMOND, C. J., and HOR-
NEY, BARNES, McWILLIAMS and FINAN, JJ.

*Joel Savits,* with whom were *Barker & Savits* on the brief
for appellant.

*Norman H. Heller* for appellee.

HORNEY, J., delivered the opinion of the Court.

In this tort action tried in Maryland under Virginia law for
personal injuries received by a guest passenger riding in an
automobile operated by the owner, the question on appeal is
whether there was sufficient evidence of gross negligence to
allow the jury to determine whether the plaintiff-appellee was
entitled to recover damages from the defendant-appellant.

In the early evening of a day in mid-January of 1965, the
appellant, Richard A. Romanesk, accompanied by his wife, the
appellee, Margo D. Rose, and Guy S. Pizzuto, drove from Pal-
mer, Maryland, to a housewarming party in Arlington, Virginia.
The party continued until about 1:30 a.m. the next day. The
appellee had two or three glasses of champagne during the party
and the appellant had a glass of champagne and three highballs.
None of the group was intoxicated. After the party broke up,
the appellant ate breakfast with the host. Between 2:30 and
3:00 a.m. the two couples left for the return trip, the Roman-
esks (the husband driving) in the front seat and the two pas-
sengers seated in the rear of the automobile.

At the trial, Margo Rose testified that they left Washing-
ton Street, went down a hill and turned right to get onto Arling-
ton Boulevard. Although she dozed off at once, she remembered
hearing a noise and feeling bumps but recalled nothing else un-
til she awoke in a hospital.

Guy Pizzuto testified that the appellant stopped at a blinking
red light at the intersection of Nash Street and Arlington Road
and that when Romanesk got on the main highway he accel-

erated quickly up to what he estimated to be "sixty or seventy miles an hour" in a thirty-five mile zone. He further stated that he had leaned forward to ask the driver to reduce his speed when the automobile slowed down and it seemed to him that "we were trying to make a turn or something" and that when the driver tried to slow he reduced his speed to "fifty or fifty-five miles an hour" and veered off the road and struck an embankment on the edge before the automobile struck a concrete abutment.

The roadway where the accident occurred was unlighted. Both sides of the road were being reconstructed and torch-topped barrels[1] were spaced along the edges of the roadway. There was a road sign—Washington Next Right—and a break in the line of barrels immediately before the automobile reached the point of impact.

At the close of the case for the plaintiff, the defendant moved for a directed verdict but the trial court declined to rule on the motion at that time.

Richard Romanesk admitted that the accident occurred in a thirty-five mile zone, but denied that Pizzuto had correctly estimated his speed. He testified that he had been misled by the sign and the break in the line of barrels to believe that the road turned off where he attempted to turn; that he struck several of the barrels and knocked them into the gully; that as he left the paved portion of the roadway he saw a deep drop before him; and that he accelerated the motor and turned his wheels to the left to prevent the automobile from dropping over the embankment but could not avoid striking the abutment of the overpass. The automobile was almost completely demolished.

When the defendant renewed the motion for a directed verdict at the close of all the evidence, it was denied. The motion for a new trial or in the alternative for a judgment *n.o.v.* was also denied.

Since the accident occurred in Virginia, it is governed by the law of that state which has a guest statute providing in pertinent part—

---

1. The record is not clear as to whether the torches were burning at the time of the accident.

"No person transported by the owner or operator of any motor vehicle as a guest without payment for such transportation * * * shall be entitled to recover damages against such owner or operator for * * * injuries to the person or property of such guest resulting from the operation of such motor vehicle, unless such * * * injury was caused or resulted from the gross negligence or willful and wanton disregard of the safety of the person or property of the person being so transported on the part of such owner or operator." Code of Virginia, Vol. 2, § 8-646.1 (1950).

Gross negligence is defined in 4 Blashfield, *Cyclopedia of Automobile Law and Practice,* § 2771 (1946 ed.) as—

"an intentional failure to perform a manifest duty in reckless disregard of the consequences as affecting the life or property of another, and also implies a thoughtless disregard of the consequences without the exertion of any effort to avoid them. Stated conversely, a wrongdoer is guilty of gross negligence or acts wantonly and willfully only when he inflicts injury intentionally or is so utterly indifferent to the rights of others that he acts as if such rights did not exist."

For cases applying this definition to guest statutes, see Blashfield, *op. cit.* § 2322; 8 Am. Jur. 2d, *Automobiles and Highway Traffic* §§ 506-523; 60 C.J.S. *Motor Vehicles* § 399(4); 42 Va. L. Rev. 97; *Wallower v. Martin,* 144 S. E. 2d 289 (Va. 1965); *Laster v. Tatum,* 146 S. E. 2d 231 (Va. 1966).

Whether or not gross negligence exists necessarily depends on the facts and circumstances in each case. *Wallower v. Martin, supra.* It is usually a question for the jury and is a question of law only when reasonable men could not differ as to the rational conclusion to be reached. *Smith v. Prater,* 146 S. E. 2d 179 (Va. 1966).

We think there was sufficient evidence to sustain the verdict of the jury in this case. While it may be that excessive speed alone would not ordinarily constitute gross negligence, *Laster v. Tatum, supra,* nevertheless, if the cumulative effect of ex-

cessive speed and other acts of negligence "shows a form of recklessness or a total disregard of all precautions akin to willful and wanton misconduct, it is a question for the jury whether such negligence amounts to gross negligence." *Kennedy v. Mc-Elroy,* 81 S. E. 2d 436, 439 (Va. 1954). Also see *Garst v. Obenchain,* 58 S. E. 2d 207 (Va. 1955) ; *Gill v. Haislip,* 114 S. E. 2d 603 (Va. 1960).

In the present case, the jury could properly have found from the evidence that the operator of the automobile, having driven over the same roadway on the way to the party, should have been aware of the obviously dangerous conditions ; that the four alcoholic drinks he had consumed together with the lateness of the hour of the night, had impaired his ability to remain alert ; that if he had seen the dangerous conditions on the way home as he should have he failed to look effectively before he attempted to make a right turn into what he thought was a roadway ; that he drove his automobile on an unlighted roadway under reconstruction at an excessive rate of speed in utter disregard of prudence ; and that he was either recklessly inattentive or had completely lost control of his automobile.

Whether the operation of a motor vehicle by a driver without looking or, having looked ineffectively, did not see what should have been seen constitutes gross negligence, is a question for the jury to decide. *Barham v. Virginia National Bank,* 142 S. E. 2d 569 (Va. 1965) ; *Solterer v. Kiss,* 70 S. E. 2d 329 (Va. 1952). Whether the disregard of prudence, such as driving at a rapid rate of speed heedless of displayed warnings, amounts to complete neglect of the safety of a guest passenger is likewise a jury question. *Leech v. Beasley,* 128 S. E. 2d 293 (Va. 1962) ; *Doerr v. Barnes,* 94 S. E. 2d 271 (Va. 1956).

In *Smith v. Prater, supra,* it was said that deliberate or voluntary inattention to the operation of a motor vehicle is a good indication of gross negligence. In *Solterer v. Kiss, supra,* it was held that it is for the jury to say if the loss of control of a motor vehicle was due to mere inadvertance or lack of ordinary care or to gross negligence.

This case, in that the appellant contends that the collision with the abutment was the result of having been misled and

confused by a directional sign into presuming that the break in the line of barrels was where he was to make a right turn to go to Washington, is similar to the case of *Solterer v. Kiss, supra,* wherein the appellant, contending that he was misled and confused by a roadway leading to Andrews Chapel, entered the primary road without stopping and collided with another motor vehicle in the intersection. In that case, as in this, the question, as to whether the failure of the driver to properly look before moving onward amounted to gross negligence, was for the jury to decide.

The law in Maryland as to what is and is not gross negligence in criminal cases involving manslaughter by automobile is in line with the Virginia decisions under the motor vehicle guest statute. As was pointed out by Judge Oppenheimer in the second footnote to the opinion in *White v. King,* 244 Md. 348, 223 A. 2d 763 (1966), the test is whether the conduct of the accused "was such as to amount to 'a wanton or reckless disregard for human life or for the rights of others.'" See *Johnson v. State,* 213 Md. 527, 132 A. 2d 853 (1957); *Lilly v. State,* 212 Md. 436, 129 A. 2d 839 (1957); *Clay v. State,* 211 Md. 577, 128 A. 2d 634 (1957).

As there was evidence from which the jury could find that the injuries of the guest passenger were caused or resulted from the gross negligence or willful or wanton disregard of her safety on the part of the owner and operator of the motor vehicle, the judgment entered by the trial court on the verdict of the jury must be affirmed.

*Judgment affirmed; costs to be paid by the appellant.*