Cornelius RASSA, et al., Plaintiffs,

v.

ROLLINS PROTECTIVE SERVICES COMPANY, et al., Defendants.

No. CIV. S–98–1017.

United States District Court,
D. Maryland.

Dec. 3, 1998.

Elaine Rinaldi, Law Office, Adam B. Weinstein, Law Office, Philadelphia, PA, Adam Jason Sevel, Law Office, Baltimore, for Cornelius Rassa, Irene Rassa, plaintiffs.

D. Stephenson Schwinn, Jordan, Coyne & Savits, Susanne Marie Lewis, Jordan Coyne & Savits, Washington, DC, for Rollins Protective Services Company, Delaware Corporation, Rollins, Inc., Delaware Corporation, defendants.

## MEMORANDUM OPINION

SMALKIN, District Judge.

The defendants, Rollins Protective Services Company and Rollins, Inc., have filed a motion to dismiss this case under Rule 12(b)(1) of the Federal Rules of Civil Procedure, contending that the plaintiffs, Cornelius and Irene Rassa, cannot recover in excess of the jurisdictional minimum required in a federal diversity action. For the reasons set forth below, the defendants' motion will be granted. The issues have been well and fully briefed, and no oral hearing is necessary. Local Rule 105.6, D. Md.

## I. BACKGROUND

The plaintiffs have filed suit to recover compensatory damages resulting from the alleged failure of a fire alarm sold and installed by the defendants. On July 3, 1990, the plaintiffs contracted to upgrade their existing home security service, purchasing a comprehensive system capable of responding to burglaries as well as fire and medical emergencies. Under the terms of the contract, the alarm system was to be connected through telephone lines to a central monitoring station manned by operators who would report emergencies to the fire and police departments.

On December 9, 1996, a fire broke out in the basement of the plaintiffs' house, and the alarm system failed to transmit a signal to the central monitoring station. The plaintiffs assert that the defendants' defective installation and programming of the system led to this failure, allowing the fire to spread undetected for a substantial period of time and causing significant damage to their home. As a result, the plaintiffs seek recovery under four different legal theories: negligence, gross negligence, breach of contract, and breach of warranty.

## II. DISCUSSION

The plaintiffs contend that this Court has jurisdiction in this case under 28 U.S.C. § 1332(a). This section provides in pertinent part that "district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between—— (1) citizens of different States."

Applying this statutory provision, Judge Harvey previously has noted:

A federal court is a court of limited jurisdiction, and it is necessary that the facts of a dispute be closely examined by the court to determine whether federal jurisdiction exists. Jurisdiction has been claimed to exist in this case under 28 U.S.C. § 1332(a), and the first essential inquiry here is whether the jurisdictional requirement of $50,000 [1] has been met.

*Herlihy v. Ply–Gem Indus., Inc.,* 752 F.Supp. 1282, 1285 (D.Md.1990). In undertaking this examination, this Court has held that the "[f]ailure to meet the jurisdictional amount need not be apparent from the face of the pleadings." *Maryland Nat'l Bank v. Nolan,* 666 F.Supp. 797, 798 (D.Md.1987). Even after trial, "'if from the proofs, the court is satisfied to a [legal] certainty that the plaintiff never was entitled to recover that amount,'" the case should be dismissed for want of subject matter jurisdiction. *Id.* (quoting *Saint Paul Mercury Indem. Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938)).

This Court recently has stated that "'the party seeking to invoke the jurisdiction of the federal courts has the burden of proving its existence by showing that it does not appear to a legal certainty that its claim is for less than the jurisdictional amount.'" *Schaefer v. Aetna Life & Cas. Co.,* 910 F.Supp. 1095, 1097 (D.Md.1996) (quoting 14A Charles Alan Wright et al., Federal Practice and Procedure § 3702, at 19 (1985)). As the discussion below demonstrates, however, the plaintiffs can recover no more than $500 under any of the legal theories advanced, far below what is required by 28 U.S.C. § 1332(a).

### A. Negligence and Gross Negligence Claims

The plaintiffs have alleged that the defendants' actions in installing and programming the alarm system constituted both negligence and gross negligence. To prove either count, the plaintiffs must show that the defendants owed some duty of care to the plaintiffs under Maryland law.[2] The Court of Appeals of Maryland has recently emphasized that there can be no claim for negligence "'where there is no duty that is due;

---

1. As noted in the statutory language, Congress raised the minimum jurisdictional amount for diversity actions from $50,000 to $75,000 in 1996. *See* Federal Courts Improvement Act of 1996, Pub.L. 104–317, 110 Stat. 3847 (1996).

2. Because this is a diversity action, it is necessary to look to the substantive law of Maryland to determine whether the plaintiffs could recover the minimum amount necessary to establish subject matter jurisdiction in this case. *See Wiggins v. North Am. Equitable Life Assurance Co.,* 644 F.2d 1014, 1017 (4th Cir.1981).

for negligence is the breach of some duty that one person owes to another. It is consequently relative and can have no existence apart from some duty expressly or impliedly imposed.'" *Bobo v. State*, 346 Md. 706, 714, 697 A.2d 1371 (1997) (quoting *West Virginia Cent. & P.Ry. v. State ex rel. Fuller*, 96 Md. 652, 666, 54 A. 669 (1903)). Likewise, the Court of Appeals has defined gross negligence as "'an intentional failure to perform a *manifest duty* in reckless disregard of the consequences as affecting the life or property of another ....'" *Liscombe v. Potomac Edison Co.*, 303 Md. 619, 635, 495 A.2d 838 (1985) (quoting *Romanesk v. Rose*, 248 Md. 420, 423, 237 A.2d 12 (1968)) (emphasis added).

■ In bringing their tort claims, however, the plaintiffs have "failed to point to any statute or common law rule which would support a finding that Defendants owed a duty of care to [them]." *Tolson v. Primerica Corp.*, No. HAR–89–3557, 1991 WL 83136, at *5 (D.Md. May 20, 1991). The contractual relationship between an alarm company and a customer does not, *ipso facto*, give rise to a tort duty, as would the relationship between a doctor and a patient, a lawyer and a client, or a common carrier and a passenger. In the absence of a tort duty "independent of that arising out of the contract itself," *Heckrotte v. Riddle*, 224 Md. 591, 595, 168 A.2d 879 (1961), the plaintiffs are without a cognizable claim for either negligence or gross negligence under Maryland law.

In their seminal treatise, Professors Prosser and Keeton provide a helpful framework for distinguishing tort and contract claims as between parties to a contract; their analysis further supports the preclusion of the plaintiffs' negligence and gross negligence counts in this case. They note:

> Tort obligations are in general obligations that are imposed by law on policy considerations to avoid some kind of loss to others. They are obligations imposed apart from and independent of promises made and therefore apart from any manifested intention of parties to a contract or other bargaining transaction. Therefore, if the alleged obligation to do or not to do something that was breached could not have existed but for a manifested intent, then contract law should be the *only* theory upon which liability would be imposed.

W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 92, at 656 (5th ed.1984) (emphasis in the original). Applying this reasoning to the instant case, the defendants' obligation to install, program, and monitor the plaintiffs' alarm system arose exclusively from the agreement between the parties and not from any separate, state-imposed tort duty. Thus, under well-settled Maryland law, an action on the contract provides the plaintiffs with their sole avenue for recovery.[3]

A careful review of the complaint plainly reveals that the plaintiffs have asserted these tort claims for purely economic losses stemming from the defendants' failure to perform the agreed-upon contract. "In that the essence of the relationship was contractual, and the essence of the claimed dereliction by defendant was failure to perform the contract, only contract damages are recoverable." *Nixon Uniform Serv., Inc. v. American Directory Serv. Agency, Inc.*, 693 F.Supp. 367, 368 (D.Md.1988) (applying Maryland law).[4] Preclusion of the plaintiffs'

---

3. In *Steiner Corp. v. American District Tel.*, 106 Idaho 787, 683 P.2d 435 (Idaho 1984), the Supreme Court of Idaho considered a negligence claim against an alarm company stemming from the alleged failure of a fire alarm system and came to the same conclusion reached here. The court held that to maintain an action in tort, a clear duty must be shown to exist by operation of law, separate and apart from the contractual duty to maintain the equipment. It is clear from the allegations in the complaint that such a separate duty cannot be shown. Apart from this contract, [the alarm company] could not be said to have a duty to maintain equipment in [the plaintiff's] building. [The plaintiff] has not pointed to any statutory duty of suppliers of fire alarm systems, nor pointed to any common law duty of a supplier to his customer. The only duty to which [the alarm company] could be held under the facts of this case is that which arose by virtue of the contract obligating it to maintain this fire alarm system. *Id.* at 438–39.

4. *Accord Martin Marietta Corp. v. International Telecommunications Satellite Org. (INTELSAT)*, 763 F.Supp. 1327 (D.Md.1991), *aff'd in part, rev'd in part on other grounds*, 991 F.2d 94 (4th Cir.1992). In that case the court observed that

tort claims in this case is wholly consistent with the maintenance of the "proper distinction between tort and contract law" espoused by Maryland courts. *Flow Indus., Inc. v. Fields Constr. Co.,* 683 F.Supp. 527, 530 (D.Md.1988).

## B. Breach of Warranty Claims

In addressing the plaintiffs' Uniform Commercial Code (U.C.C.) warranty claims, the Court noted, in a prior order, the potential applicability of Md. Com. Law I Code Ann. § 2–316.1 (1997) to the facts of this case. Under that statute, "[a]ny ... written language used by a seller of consumer goods and services, which attempts to exclude or modify any implied warranties of merchantability and fitness for a particular purpose or *to exclude or modify the consumer's remedies for breach of those warranties, is unenforceable.*" § 2–316.1(2) (emphasis added).

The contract at the heart of this dispute involves the sale of both consumer goods (an alarm system) and services (the installation, programming, and monitoring of the alarm system). The Court of Appeals of Maryland has described such an agreement as "a mixed or hybrid transaction." *Anthony Pools v. Sheehan,* 295 Md. 285, 290, 455 A.2d 434 (1983). It appears that the predominant purpose of this hybrid contract was for the installation, programming, and monitoring of the alarm system, while the sale of the alarm parts was incidental to the services provided by Rollins. *See id.* at 293, 455 A.2d 434 (considering the sale and construction of an in-ground swimming pool, the court noted that "[t]he predominant factor, the thrust, the purpose of the contract was the furnishing of labor and service by Anthony, while the sale of the diving board was incidental to the construction of the pool itself").

■ However, even where the sale of services constitutes the predominant purpose of such a contract, the protections against modifying a consumer's remedies for breach of the implied warranties of merchantability and fitness for a particular purpose under

§ 2–316.1 would still apply to the "goods" component of the contract. *See id.* at 297, 455 A.2d 434 ("[W]here, as part of a commercial transaction, consumer goods are sold which retain their character as consumer goods after completion of the performance promised to the consumer, and where monetary loss or personal injury is claimed to have resulted from a defect in the consumer goods, the provisions of the Maryland U.C.C. dealing with implied warranties [including § 2–316.1] apply to the consumer goods, even if the transaction is predominantly one for the rendering of consumer services."). Accordingly, the contested limitation of liability provision in the Rollins contract arguably would be inoperative under § 2–316.1 as it would improperly limit the Rassas' remedy for breach of those warranties.

■ Clearly, though, any action brought in this case under the U.C.C. for breach of warranty is barred by the statute of limitations as provided in § 2–725. Under § 2–725(1), "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." The statute further states:

A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach. A breach of warranty occurs when the tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance, the cause of action accrues when the breach is or should have been discovered.

§ 2–725(2).

The tender of delivery of the alarm system in this case occurred in July 1990, and the contract into which the parties entered did not contain any express warranties as to future performance. Thus, the plaintiffs failed to bring their breach of warranty claim by July 1994 as required by the statute of limitations. *See Lee v. Baxter Healthcare*

---

"contract duties are those specifically agreed upon by the parties, while tort duties are those imposed by the state for the purpose of protecting a vulnerable party.... [I]n those instances where the relationship between the parties is

purely contractual, and the heart of plaintiff's claim is the defendant's failure to perform the contract, contract damages will suffice to compensate the plaintiff—no extra protection for the parties is necessary." *Id.* at 1331.

*Corp.*, 721 F.Supp. 89, 96 (D.Md.1989), *aff'd*, 898 F.2d 146, 1990 WL 27325 (4th Cir.1990) (holding that plaintiff's breach of warranty claim against manufacturer of breast prosthesis was barred by § 2–725 where plaintiff received implants on March 3, 1976 and failed to commence action by March 3, 1980).

■ Thus, the lingering issue before the Court is whether there remains a viable claim for breach of warranty for the "services" aspect of the contract between the Rassas and Rollins. To reach such a conclusion would require this Court to hold that an implied warranty applies to consumer services which cannot be limited or modified under § 2–316.1 and is independent of any warranty attaching to the goods. Under this theory, the statute of limitations would not bar a warranty claim related to Rollins' monitoring obligations because of the continuing nature of this service.

■ This Court concludes, however, that to allow an independent breach of warranty claim for services, where the statute of limitations has barred the warranty claim for the "goods" portion of the transaction, would be improper. Such a result would extend § 2–316.1 beyond the scope of the statutory title of which it is a part; Title 2 of the Maryland U.C.C. (usually referred to as "Article 2") applies, "[u]nless the context otherwise requires," only to "transactions in goods." § 2–102; *see also* § 2–105 (defining "goods" as "moveable"). Therefore, providing a consumer service (such as monitoring and servicing a burglar/fire alarm), absent a related, actionable goods warranty, is not a "transaction in goods" and cannot independently give rise to a warranty claim under Title 2. In addition, the "context" of § 2–316.1 does not "require" the application of this statute to purely service contracts; the language of § 2–316.1, referring to specific U.C.C. warranties that apply in terms only to goods, *see* §§ 2–314 and 2–315, is insufficient to imply like warranties in all consumer service contracts.

In sum, under *Anthony Pools*, § 2–316.1 generally precludes the limitation of a consumer's remedy for a breach of an implied warranty in the "goods" portion of a predominantly services contract. In this case, however, the plaintiffs cannot avail themselves of the rule announced in *Anthony Pools*, as their warranty claims, based on the sale of goods in this hybrid transaction, are precluded by the statute of limitations. Likewise, absent a viable warranty claim related to the goods sold under this contract, there exists no independent warranty claim covering the services provided by the defendants under Title 2 of the Maryland U.C.C.

### C. Breach of Contract Claim

■ The plaintiffs' claim for breach of contract, thus, remains as the lone count before the Court. To determine whether this cause of action will satisfy the $75,000 amount in controversy requirement of 28 U.S.C. § 1332(a), the Court must resolve the legal issue of the enforceability of the limitation-of-liability provision in the contract.

The specific contractual language at issue provides:

CUSTOMER ACKNOWLEDGES AND AGREES THAT IF ANY LOSS OR DAMAGE SHOULD RESULT FROM THE FAILURE OF THE DETECTION SYSTEM, OR THE MONITORING SERVICE, OR FROM IMPROPER DESIGN, INSTALLATION, MAINTENANCE OR REPAIR OF THE DETECTION SYSTEM, WHETHER WITHIN THE LIMITED WARRANTY PERIOD OR OTHERWISE, RPS' LIABILITY, IF ANY, FOR SUCH LOSS OR DAMAGE SHALL BE LIMITED TO A SUM NOT GREATER THAN FIVE HUNDRED DOLLARS ($500.00). IN THE EVENT PARTIES DESIRE TO IMPOSE GREATER LIABILITY UPON THE OBLIGATION HEREUNDER, CUSTOMER MAY REQUEST AN INCREASED LIMITED LIABILITY BY OFFERING TO PAY AN ADDITIONAL AMOUNT OF TEN (10%) PERCENT OF THE INCREASED LIMIT (MINIMUM OF $100 INCREMENTS) AND, IF ACCEPTED BY RPS, AN ADDITIONAL RIDER SIGNED BY THE PRESIDENT OF ROLLINS, INC. SHALL BE ATTACHED TO THIS AGREEMENT SETTING FORTH THE ADDITIONAL LIABILITY OF RPS. I HAVE READ THIS CLAUSE AND

CHOOSE _____ DO NOT CHOOSE [initialed] AN INCREASED LIABILITY. The plaintiffs vehemently argue that the contract signed by the parties is one of adhesion and that the limitation of liability provision is unconscionable and, therefore, unenforceable. Accordingly, they maintain that they should be allowed to pursue the full amount of their alleged damages, well in excess of the statutory minimum needed to establish subject matter jurisdiction.

■ Authority from the Court of Special Appeals of Maryland, though, belies the plaintiffs' contention that the limitation of liability term is unconscionable. In *Schrier v. Beltway Alarm Co.*, 73 Md.App. 281, 533 A.2d 1316 (1987), the court upheld the validity of a limitation of liability clause in a burglar alarm contract, noting that " '[e]xcept in the case of certain public service contracts, the contracting parties can by agreement limit their liability in damages to a specified amount, either at the time of making their principal contract, or subsequently thereto.' " *Id.* at 292, 533 A.2d 1316 (quoting Restatement of Contracts § 339, comment g (1932)). In reaching this decision, the court found sound policy reasons for enforcing the contested contractual provision:

> 'Most persons . . . carry insurance for loss due to various types of crimes. Presumptively insurance companies who issue such policies base their premiums on their assessment of the value of the property and the vulnerability of the premises. No reasonable person could expect the provider of an alarm service would, for a fee unrelated to the value of the property, undertake to provide an identical type coverage should the alarm fail to prevent a crime.'

*Id.* at 294–95, 533 A.2d 1316 (quoting *Guthrie v. American Protection Indus.*, 160 Cal. App.3d 951, 954, 206 Cal.Rptr.3d 834 (1984)).

Persuaded by these policy considerations, the court found that the contract signed by the parties constituted a "commercially sensible arrangement," and refused "to rewrite their agreement to compel the [alarm company] to act as an insurer." *Id.* at 295, 533 A.2d 1316. As a result, the Court of Special Appeals concluded that the limitation of liability clause was not unconscionable: "The agreement is not one 'such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.' " *Id.* (quoting *Earl of Chesterfield v. Janssen,* 2 Ves. Sr. 125, 28 Eng. Rptr. 82 (1750)).

■ The result reached in *Schrier* is binding on this Court unless there are "persuasive data" that the Court of Appeals of Maryland would reject it. *Assicurazioni Generali, S.p.A. v. Neil,* 160 F.3d 997, 1002 (4th Cir. 1998). There simply are no such data. Indeed, in a fairly recent case, the Court of Appeals cited *Schrier,* along with a number of other Court of Special Appeals cases, in a review of Maryland law on the validity of contractual exculpatory and limitation-of-liability clauses. *Wolf v. Ford,* 335 Md. 525, 532–35, 644 A.2d 522 (1994). Although the Court of Appeals adopted a different analytical approach in *Wolf* than that used by the Court of Special Appeals in *Schrier,* it did not overrule or question the result in *Schrier. Id.* at 534, 644 A.2d 522.

In *Assicurazioni Generali,* the Fourth Circuit held that an applicable decision by the Court of Special Appeals provides controlling authority for the federal courts on Maryland law where it has been cited, but not overruled, by the Court of Appeals in a case that reaches a different result from that of the intermediate appellate court without expressly overruling it. *Assicurazioni Generali,* at 1004. Certainly, *Wolf* does not so undermine confidence in the continuing validity of *Schrier* as to constitute the "persuasive data" justifying failure to follow *Schrier.*

Furthermore, *Schrier* is consistent with the overwhelming majority of decisions that have addressed the validity of limitation of liability clauses in alarm contracts. For example, in *Vallance & Co. v. De Anda,* 595 S.W.2d 587 (Tex.Civ.App.1980), the Court of Civil Appeals of Texas upheld a limitation of liability clause in a burglar alarm contract, stating:

> When a burglar alarm company undertakes to provide protective services under terms limiting its liability for the ineffectiveness of the performance of those services, no public policy is violated. On the

contrary, there is a sound policy reason compelling the enforcement of these provisions. Appellee paid a service charge of $24.50 per month to appellant. It would be unreasonable to expect appellant to assume the responsibilities arising under a burglary insurance policy upon payment of ... this nominal fee. Had appellee desired greater protection against loss from burglary he could have purchased burglary insurance or paid additional amounts under a graduated scale of rates, as provided in the agreement.

*Id.* at 590 (internal quotations and citations omitted).

More recently, the Second Circuit echoed the same concerns, stating that "[e]ven where the contract is not only for the sale and installation of a burglar alarm system but is also for its maintenance or monitoring, if the fee paid is not sufficiently high to include a premium for theft insurance, a clause limiting the alarm service company's liability in the event the alarm system does not function properly is not unconscionable." *Leon's Bakery, Inc. v. Grinnell Corp.*, 990 F.2d 44, 49 (2d Cir.1993) (applying Connecticut law). *See generally* Martin J. McMahon, Annotation, *Liability of Person Furnishing, Installing, or Servicing Burglary or Fire Alarm System for Burglary or Fire Loss,* 37 A.L.R.4th 47, 53, 1985 WL 287306 (1985) ("With respect to fire alarms, the courts have generally upheld the validity and enforceability of limitation-of-damages clauses in contracts between alarm companies and customers, who alleged that their fire losses were caused by the failure of their security systems to raise alarms during fires, the courts stressing that such clauses were not void as against public policy, and that the alarm companies were not insurers against fire losses.").

Thus, there are significant policy reasons for enforcing the limitation of liability provision at issue in this case and no "persuasive data" that *Schrier* should be disregarded. Under the original terms of the contract, the plaintiffs paid a total of $35.50 per month to Rollins for servicing and monitoring their burglar/fire alarm system. The Rassas hardly could have expected the defendant to act as a property insurer for such a minimal cost.

Based on the foregoing, the limitation of liability clause at issue is not unconscionable under settled Maryland law.

As noted above, the plaintiffs also maintain that the agreement signed by the parties constitutes a contract of adhesion, claiming that they "were not given the opportunity to negotiate a single term of the contract, let alone any of the provisions excluding or limiting Rollins' liability." Pltf. Mem. at 31. A contract of adhesion has been defined by the Court of Special Appeals "as one that is drafted unilaterally by the dominant party and then presented on a take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms." *Meyer v. State Farm Fire and Cas. Co.*, 85 Md.App. 83, 89, 582 A.2d 275 (1990) (internal quotations omitted).

While the contract includes standard, boilerplate language, the Rassas plainly did not face a take-it-or-leave-it proposition regarding the limitation of liability clause. At the end of the limitation of liability provision in the contract, Mr. Rassa acknowledged, through the placement of his initials, that he had read the dispositive clause and declined to increase Rollins' liability in exchange for a higher fee. Thus, the plaintiffs had a meaningful choice to pay the additional cost to have Rollins assume greater liability in the event of a loss; they simply did not exercise this option.

The Court finds the plaintiffs' remaining arguments attacking the enforceability of the limitation of liability clause to be without merit. Based on the discussion above, the Court concludes that the contract into which the parties entered was not unconscionable or in any way violative of public policy. Thus, the contractual limitation of liability provision is enforceable, and the plaintiffs' maximum possible recovery for breach of contract is $500. Accordingly, this Court is without subject matter jurisdiction to hear this controversy under 28 U.S.C. § 1332(a) and the case is dismissed pursuant to Rule 12(b)(1). *See Pratt Cent. Park Ltd. Partnership v. Dames & Moore, Inc.*, 60 F.3d 350, 353 (7th Cir.1995) (noting that "[s]everal cases hold or imply that a court has the power to dismiss for want of jurisdiction after deciding that a limitation-of-liability clause ... caps damages at less than the

jurisdictional amount"); 14B Charles Alan Wright et al., Federal Practice and Procedure § 3702, at 98 (1998) (providing that "the legal-certainty standard for purposes of defeating the court's subject matter jurisdiction" has been met "when the terms of the contract limit the plaintiff's possible recovery").

### III.  CONCLUSION

For the foregoing reasons, the Court finds that the plaintiffs have failed to demonstrate to a legal certainty that they could recover the requisite amount necessary to bring this case in federal court.  The defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is, therefore, GRANTED, and an appropriate order will be entered separately.

### *ORDER*

For the reasons stated in a Memorandum Opinion, of even date, it is by the Court, this 4th day of December, 1998, ORDERED:

That the Motion to Dismiss for Lack of Subject Matter Jurisdiction BE and it hereby IS, GRANTED.